Danley vs. Crawl et al.

DANLEY vs. CRAWL et al.

ATTORNEYS: *When cannot delegate authority to collect.*

Where a claim is placed in the hands of an attorney for collection merely, and it does not appear that he is employed generally to act for the party, he is a special agent for that particular purpose, and without authority to do so, cannot delegate his power to collect to a third person, so as to bind his principal.

APPEAL from *Pulaski* Chancery Court.

Hon. T. D. W. YONLEY, Chancellor.

*Wassell & Moore* and *Clark & Williams*, for appellant.

*A. H. Garland*, for appellee.

STEPHENSON, J. On the first day of October, 1859, the appellees Crawl and J. W. Ward, executed a mortgage to appellant on certain lots in the city of Little Rock, to secure the payment of a note for $860.12, which was loaned them to complete the payment of the purchase money.

Subsequently, Ward paid one half of the purchase money and interest, and Danley released the mortgage as to him, clearing the title to lots 7, 8 and 9, block 141, and holding the unpaid balance of the note against Crawl, and the mortgage

against the remainder of the lots. Crawl failed to pay the note when due, and Danley brought suit to foreclose. This suit was brought to the June term, 1861, of the Pulaski chan-cery court, by the law firm of Pope & Newton, attorneys for Danley. After the filing of the bill, Pope & Newton left Lit-tle Rock and placed the case in the hands of Pleasant Jordan, who, as is agreed by the parties to this suit, took charge of the case, without the knowledge or consent of Danley. In 1862, while the suit was still pending, Jordan received from Crawl the amount of principal and interest due on the note in Con-federate money, and gave him a receipt in full and an order to the clerk to dismiss the suit, which was accordingly done. All this, it is agreed, was done without Danley's knowledge or consent.

On the 24th of November, 1864, the records of Pulaski being absent from the county, Crawl sold the lots to Orville Jennings, and gave him a deed therefor, receiving a part of the purchase money. Before paying the remainder of the money, which was nearly or quite sufficient to satisfy the claim of Danley, he was informed by witness Wassell of the existence of the Danley claim, but disregarded it and ex-pressed himself as fully capable of resisting any claim which he, Danley, had an account of the Jordan receipt. On the 5th of July, 1866, Jennings contracted the lots to F. T. Vaughan for $5,000, payable in installments, and on the day following, satisfaction of the claim of Danley was entered of record by the clerk. On the 6th day of August, 1866, Dan-ley again brought suit to foreclose his mortgage, and making all the parties connected with these various transactions de-fendants. The cause went to hearing upon the bill and an-swer thereto, cross-bill of Vaughan, and cross-bill of the ad-ministrator of Jennings, deceased, and the cross-bill of his widow, exhibits, depositions, etc. The court dismissed the

Danley vs. Crawl et al.

crossbill of Vaughan for want of equity; gave judgment against Crawl for the amount of the note and interest, but found that Jennings was an innocent purchaser for value, without notice of the lien of Danley, and he and his grantee took the lots discharged of the lien. Danley appealed. We will consider but one question raised by the transcript, the disposal of which renders it necessary to consider the others discussed by counsel. In the agreed statement of facts, it is admitted that Pope and Newton instituted suit for Danley to forcelose the mortgage, and that subsequently they placed the case in the hands of Jordan without the knowledge or consent of their client, who received from Crawl in satisfaction of the note and mortgage confederate money. Danley, in his answer to the crossbill of Jennings, administrator, denies that he ever recognized Jordan as his attorney, or that he ever received the confederate money or any part of it for his debt, and avers that Jordan's entire connection with the case was without his knowledge or consent, and there is no proof to sustain the allegations in the crossbill. This state of testimony is conclusive of the case. Pope and Newton themselves could have made the settlement and received the confederate money, and such acquittance would have, if ratified by his principal, discharged Crawl from liability on the note and mortgage, but they could not delegate their authority to another without the consent of the principal, so as to bind him. It is true the principal could have ratified the act of the sub-agent, if, upon information as to his actions, he had seen proper. Yet he was at liberty to repudiate the action of such agent and look to the debtor for his pay. This state of case arises out of the particular relation in which the parties stand toward each other. The firm of Pope and Newton were the agents of Danley; their agency was not a general one, but was confined, so far as we know from this record (and if it were differ-

Danley vs. Crawl et al.

ent the appellee should have shown it), to the single transaction under consideration here. This being the case it was the duty of this appellee to have informed himself of Jordan's right to collect the money and satisfy the mortgage, for it is well settled that where a party deals with a special agent, it is his duty to ascertain the scope of the agent's authority, and if he neglects to do so and goes beyond it, he must suffer the consequences. Smith's Merc. Law, 3d ed., p. 173; Story's Ag., secs. 12, 15, 388, 389, 437. An attorney in whose hands a claim is placed for collection merely, and it does not appear that he is employed generally to act for the party, certainly comes within the above rule, and without authority to do so, cannot delegate his power to collect to a third person. *Kelley & Co. v. Norris*, 10 Ark., 18.

Danley, as we have said, could have ratified the action of Jordan, if he had chosen to do so, but he was not bound by his action unless such ratification was made to appear, or such length of time had elapsed as that a ratification would be presumed. As is shown by the proof, the country was in a state of war, and Danley was not in such a situation toward Jordan as that his assent will be presumed. On the contrary, he seems soon after the close of the war to have instituted his suit, which very conclusively signifies his intention not to be bound by Jordan's action. Jennings could, if he had seen proper, have protected himself from loss by withholding sufficient of the purchase money to indemnify himself against loss, for he was notified by Wassell of the existence of the mortgage, but did not choose to do so. Neither can Vaughan be heard to say that he is an innocent purchaser without notice, for it was not until after his purchase that the satisfaction was entered of record in pursuance of the Jordan receipt and order, and it would appear from the nature of his payments to Jennings that he is amply secure as to the Danley debt.

If our view of the law is correct, the payment of the Confederate money or the payment to him of any kind of money, was not binding upon the appellant, and the sale of the property to Jennings, and the subsequent sale to Vaughan, was and is subject to Danley's mortgage. The decree of the court is reversed, and the cause remanded with directions to enter a decree in conformity to this opinion.