## DAVIS *v.* TRIMBLE.

### Opinion delivered June 17, 1905.

1. APPEAL—SUFFICIENCY OF EVIDENCE.—In testing the sufficiency of evidence to support a verdict the appellate court gives to it the strongest probative force of which it is susceptible in favor of the verdict. (Page 117.)

2. ATTORNEY—IMPLIED CONTRACT TO PAY FOR SERVICES.—Attorneys employed by the general manager of an insolvent railroad company to defend a suit against it cannot hold the trustees of an estate holding bonds issued by the railroad company, who were also stockholders and directors of the railroad company, liable for their fee merely because

they knew the services were being performed, or because they manifested a proper interest in the defense of the suit. (Page 119.)

Appeal from Faulkner Circuit Court.

SAM FRAUENTHAL, Special Judge.

Reversed.

*Ratcliffe & Fletcher,* for appellants.

An attorney cannot recover a fee from a party who has not employed him. 5 La. Ann. 481; 20 So. 862; Thompson, Stockholders, § 4; 13 Metc. 539; Cook, Corporations, § 243. In the absence of an express contract appellants had a right to presume that appellees looked to the principal. Mech. Ag. § 558; 21 Conn. 627; 44 N. Y. 349; 48 N. Y. 300; 68 N. Y. 400; 84 Mo. 578; 46 N. Y. 70; 6 Har. & J. 418; 101 U.S. 392. Appellants could not be liable except upon the express contract. 11 Ark. 212; 64 Ark. 462; 45 Ark. 67; 12 Ark. 174; 34 Ark. 613; 37 Ark. 164. The seventh instruction should have been given. Wood, Stat. Fr. § 150; 155 U. S. 28; 65 Ark. 278. A verdict should have been instructed for appellants. 57 Ark. 461; 61 Ark. 621; 62 Ark. 159; 66 Ark. 505; 67 Ark. 154; 69 Ark. 497.

*Joe T. Robinson,* for appellees.

Under the facts, the law will imply a contract. Weeks, Attys. 666; 21 Fed. 169; 132 Ill. 543; 106 N. Y. 82. The retainer may be inferred from facts and circumstances. Weeks, Attys. 686. The absence of an express promise will not prejudice recovery, if employment is fairly apparent from the circumstances. 4 Am. & Eng. Enc. Law, 985; 3 Wash. 755; 61 Ill. 96; 37 Ohio St. 479; 40 S. W. 155; 34 Ga. 328; 9 Johns. 142; 70 Ill. 19; 29 Minn. 129; 111 Mass. 504; 20 N. H. 205; 69 Fed. 216. The verdict was reasonable. Weeks, Attys. 694, 697, 698. The peremptory instruction was properly refused. 37 Ark. 164, 259, 580; 35 Ark. 146; 33 Ark. 350; 36 Ark. 451; 34 Ark. 409, 743 . The existence and terms of the contract was a question for the jury. 112 Pa. St. 371; 66 Md. 444; 70 Ia. 609.

McCULLOCH, J. Appellees, Thomas C. Trimble, J. M. McClintock and Eugene Lankford brought this suit against R. W. Worthen, Oscar Davis, Zeb Ward, Jr., George R. Brown and W. B. Worthen to recover $2,500 alleged, to be owing them by the defendants for services as attorneys at law rendered for the defendants in an action in the Prairie Circuit Court, wherein S. L. Harr was plaintiff and said R. W. Worthen and the Mississippi & Little Rock Railroad Company were defendants.

R. W. Worthen failed to answer, and judgment was rendered by default against him. The cause was dismissed before trial as to W. B. Worthen and George R. Brown.

Appellants, Davis and Ward, answered, denying specifically each allegation of the complaint. A trial by jury was had upon the issues raised by their answer, which resulted in a verdict in favor of the plaintiffs for $2,000, and defendants appealed to this court.

Appellants asked a peremptory instruction to the jury to return a verdict in their favor, and they now urge that the verdict against them is without testimony to support it. In testing the sufficiency of the evidence we must give it the strongest probative force of which it is susceptible in favor of the verdict of the jury.

The suit in which the services of appellees were performed was against a railroad corporation and R. W. Worthen, its principal stockholder and manager. He employed appellees as attorneys to defend the suit; and it is not claimed that either of appellants had anything to do with the employment of attorneys, or that any mention was ever made to them, until after the termination of the suit, that they would be expected to pay any part of the fee.

Appellants each owned stock of the face value of $100 in the railroad corporation, but which was of no value at the time of the pendency of the suit in question, as the corporation was then insolvent. They were directors in the corporation, and this stock was given them by R. W. Worthen, who owned substantially all the stock, to qualify them as directors. They were also trustees of the estate of Zeb Ward, deceased, which estate held a large amount of bonds issued by the railroad company. Appellant Zeb Ward, Jr.,

and the wife of appellant Davis were two of the five heirs of Zeb Ward, deceased.

Col. Trimble and Mr. Lankford, of appellees, both testified that they were employed by R. W. Worthen in 1893 to defend the suit, and that some time between that time and the trial of the case in 1896 they consulted with Davis in Little Rock concerning the suit; that Davis manifested considerable interest in the suit, and attended the trial. They say that he was sworn as a witness in the case, and claimed the privilege, as a party in interest, of exemption from the rule of the court excluding the witnesses from the court room during the trial. Neither of them testify, however, that he employed them in the suit, or agreed before the trial to pay the fee, or that anything was said about the fee or employment. Col. Trimble testified that some time after the trial he approached Davis about payment of the fee, and the latter declined to pay it, but said that the attorneys ought to have something, and that he (Davis) was going to get together Worthen and others, who were interested, and consult about it.

Mr. Lankford testified that a short while after the trial he called to see appellant Davis in Little Rock about the fee, and he relates the substance of the interview with Davis, as follows: "I remember when I saw Mr. Davis he put me off by saying he would have to see Mr. Worthen; that they had some matters to fix up, and said for me to see Worthen. I told him I needed the money. He said: "We have got to have a little straightening up, the Wards and Worthen; and I don't know whether we ought to pay it or he. Wait and see him."

It is further shown that, after the trial of the Harr suit, a bill of exceptions was filed preparatory to appeal to this court, but the appeal was not perfected, and Davis and the other trustees of the Zeb Ward estate paid the fees of the stenographer, something over $200, for services in the trial and in making a transcript of the testimony. Some time during the period mentioned, the precise date not appearing, the railroad was, in a suit instituted by the bondholders in the Federal court, placed in the hands of receivers, and Davis and W. B. Worthen were appointed receivers.

This is all the evidence throwing any light upon the connection of appellants with the Harr suit or the employment of appel-

lees as attorneys. Is there sufficient to warrant a finding that either of the appellants expressly or impliedly undertook to pay any part of the fee due appellees for services? We think not.

It is admitted that neither of appellants made any contract with appellees, and that appellees had been employed by· Mr. Worthen, the manager of the railroad corporation, before the pendency of the suit was brought to the attention of appellants. It is not contended that they ever did more than to manifest such interests as was consistent with their duties as directors in the railroad corporation, and as trustees of the Zeb Ward estate. They had a right to display that much concern in the suit, without impliedly making themselves personally liable for the fees of the attorneys who had already been employed by one in authority to conduct the defense of the suit for the railroad company.

Learned counsel for appellees contend that appellants were interested in the result of the suit, and knew of the services being performed by appellees, and that this fact is sufficient to bring the case within the rule that where an attorney performs services for another with his consent, and there is no agreement for compensation, the law will imply a contract to pay what the service is reasonably worth. This is a familiar principle, and has been repeatedly applied by this court. *Ford* v. *Ward,* 26 Ark. 360; *Hogg* v. *Laster,* 56 Ark. 382; *Lewis* v. *Lewis,* 75 Ark. 191.

It does not, however, always follow that because one receives the benefit, directly or indirectly, of the services of another, the law implies a contract to pay therefor. *Roselius* v. *Delachaise,* 5 La. Ann. 481; *Rives* v. *Patty,* 20 So. (Miss.) 862. Each case must stand upon its own peculiar facts.

But the facts of this case lack the essentials for an application of this principle, for the reason that appellants were not parties to the suit, and appellees were employed by another. If appellants had by their course of conduct induced appellees to render the service, or if they had been parties to the suit, and remained silent and accepted the services of appellees, even though employed by another, the law would imply an agreement on their part to pay for the service. But, inasmuch as they had already been employed to defend the suit, appellants had the right to assume that a display of interest in the suit on their part would not

be taken as an implied agreement to pay the fee; and, on the other hand, appellees, after having been previously employed by Worthen, the manager of the railroad, to defend the suit brought against him and the railroad, had no right to assume from such display of interest by appellants that they would pay the fee. Appellants were acting in a representative capacity as directors of the railroad corporation, and had the right, and it became their duty, to manifest a degree of interest in the suit without incurring personal liability for the fee. No intimation was given them during the pendency of the suit that they would be called upon to pay any part of the fees, and nothing was said or done, so far as appears from the testimony, to call for a disclaimer of any willingness to become responsible for the fee. We see nothing whatever in their conduct from which an agreement to pay for the services of the attorneys can be implied. It is not contended that appellants are bound by the statements or assurances made by Davis to appellee after the trial concerning payment of the fee. There was no consideration for a contract made at that time after the performance of the service for payment of the fee.

Giving to the evidence its fullest probative force in favor of the cause of action of appellees, it fails entirely to establish any contract, either express or implied, on the part of appellants to employ appellees, or to pay them for services performed in the suit named. It proves neither a contract nor facts or circumstances from which one can be implied.

The verdict not being sustained by sufficient evidence, the judgment must be reversed and remanded for a new trial. It is so ordered.

HILL, C. J., (dissenting.) S. L. Harr brought suit for about $77,000 against the Mississippi and Little Rock Railway Company and R. W. Worthen, its president. Worthen employed McClintock & Lankford, a firm of lawyers, to defend the suit, and, later, Trimble, to assist them. The services were performed, and that the amount recovered is a reasonable fee is not disputed. The railway company was hopelessly insolvent, a fact known to all parties in this litigation. Worthen was a large stockholder and bondholder, and his bonds were pledged to the Ward estate for borrowed money. Appellees have an unsatisfied judgment against

him for their fees, and presumably he is insolvent. Shortly after the employment of these lawyers they got into communication with Oscar Davis, the appellant, who evinced much interest in the litigation. He was a nominal stockholder of the railroad company, and its receiver. His wife was one of the heirs of Ward, the principal creditor of the road, and he was a trustee of the Ward estate. He had such conferences with the attorneys as any client would have, and they looked to him to bring the necessary witnesses to the trial (which he did) and pay the expenses thereof. He attended the trial, claimed the privilege of staying in court as a party in interest, instead of being excluded as a mere witness. He paid part of the expenses of the trial, his brother-in-law Ward paid the witnesses, and Davis paid, after the trial, the stenographer's fees for making the transcript. After the trial he assured both Lankford and Trimble that their fee would be paid.

The whole course of proceedings indicated he was the real client, and his interest would naturally make him so, while the nominal parties were the insolvent railroad and its bankrupt president. Under these circumstances, where the services were for the benefit of the party, and he knowingly accepts them, very slight evidence is required to raise an implied contract to pay for them.

The evidence which the jury credited on all conflicting matters was sufficient, in our opinion, to raise an implied contract, and the judgment ought to be affirmed.

Mr. Justice WOOD concurs in this opinion.