BANK OF BATESVILLE *v.* MAXEY.

Opinion delivered July 29, 1905.

1. PAYMENT—UNAUTHORIZED AGENT.—Payment to an unauthorized agent is not binding on the principal. (Page 476.)

2. UNAUTHORIZED AGENCY—RATIFICATION.—Where a firm of attorneys assumed to act for a creditor without authority by accepting payment and giving a receipt in full, and paid to the creditor the residue of the amount collected after deducting their fee, the creditor will not be held to have ratified the acts of the attorneys by accepting the money, unless the acceptance was with full knowledge of the facts, and was inconsistent with any other reasonable hypothesis than that of approval of the attorneys' acts. (Page 479.)

3. SAME—ESTOPPEL.—Where a bank held the note of the active member of a firm which was signed by several sureties, a payment by the silent member of the firm to a firm of attorneys, who, without authority, assumed to act for the bank and gave a receipt in full therefor did not bind the bank as against the sureties on the note, save to the extent that the bank actually received payment; and it will not be estopped, as to such sureties, to collect the balance due on the note, although it retained the amount so collected from the silent partner. (Page 479.)

Appeal from Independence Circuit Court.

GUSTAVE JONES, Special Judge.

Reversed.

STATEMENT BY THE COURT.

R. L. Maxey, a merchant of Independence County, borrowed two thousand dollars from the Bank of Batesville, and executed therefor the following note:

"$2,000.00.             Batesville, Ark., Dec. 23, 1901.

"Four months after date, we, or either of us, promise to pay to the Bank of Batesville, two thousand dollars at ten per cent. interest per annum from date until paid, for value received.
[Signed]

| | |
|---|---|
| "R. L. Maxey. | David Dearing. |
| "John H. Maxey. | M. D. Maxey. |
| "W. A. Greenway. | J. B. Northcut. |
| "J. F. Morris. | M. G. Farris. |
| "W. W. Edmonson. | E. T. Fulks." |

Maxey afterwards, before the note came due, failed in business, and was forced into bankruptcy, his estate being worth about 17 cents on the dollar. But the other parties to the note, who were in fact only sureties of Maxey, owned enough property to make the note good and the bank entirely safe. During the progress of the bankruptcy proceeding, Maxey, in order to protect his own sureties as far as possible, requested the cashier of the bank to file the note in the bankruptcy court, so that a *pro rata* part of the proceeds of the bankrupt's estate might be paid thereon. In compliance with this request the cashier filed the proceeds of the estate. Thereupon the cashier of the bank requested Mr. Casey, an attorney, of the firm of Yancey, Reeder & Casey, to look after the matter, in order that the note might not be stricken from the file of claims, and might be allowed its *pro rata* share of the proceeds. The attorneys did this, and the note was allowed as a claim against the estate. A dividend of 17 per cent. was afterwards paid on the claims against the bankrupt, which amounted to $348 on this note.

Of this sum 10 per cent. was retained by the attorneys, Yancey, Reeder & Casey, or paid by the bank to them, and the remainder, $313.20, was credited on the note. This dividend apparently exhausted all the assets of the bankrupt's estate, and left the balance of the note unpaid. The firm of Yancey, Reeder & Casey held for collection a number of claims against the bankrupt Maxey. Among these clients who had claims against Maxey was the White River Grocer Company, of which D. D. Adams was manager. After the bankrupt's estate had apparently been exhausted by the payment of the dividend mentioned, Adams received a telephone message from Maxey, asking him to come up to Penter's Bluff, and requesting him to bring Mr. Yancey and also Mr. Wolf, the cashier of the bank, with him. Maxey stated to Adams that if he would come up to the Bluff he would have parties there who could tell him how he could collect his debt. The cashier declined to attend the meeting, but Adams went up with his attorney, Mr. Yancey. They met there Maxey, the bankrupt, and also Fulks and Greenway, two of Maxey's sureties on the note to the bank. These parties gave information that tended to show that one Davis, a man of some financial means,

was interested in the mercantile business that Maxey had carried on to such an extent as to make him responsible for the debts that Maxey had contracted in the line of that business. They also gave information which tended to show that Davis withheld goods of the value of $181 belonging to Maxey's estate, and had failed to turn them over to the trustees of that estate in bankruptcy. These parties, Adams representing his company, Fulks and Greenway two of the sureties on the note of Maxey to the bank, Maxey himself, and Yancey, the attorney, discussed ways and means by which Davis could be made to pay these debts. Yancey advised them that if they could prove the facts stated by them Davis could be made to pay the debts. Yancey and the firm of attorneys of which he was a member proceeded then along the line of the facts divulged at the meeting to obtain evidence to show that Davis was liable for such debts. From time to time they held consultations with Maxey and the other parties who had been present at the first meeting. They obtained the affidavits of Maxey and others, showing that Davis was an owner of an interest in the business that Maxey had carried on, and that he was liable for the debts, and also that he had withheld goods of the bankrupt's estate. They then had Davis summoned before the referee in bankruptcy to answer these charges. When Davis arrived in Batesville on the day set for the hearing of these matters, Yancey took him to his office, and showed him the affidavits of witnesses tending to show that he was liable for the debts, and had withheld assets of the bankrupt. A few hours afterwards, Davis and his attorney met Yancey, and the attorney of Davis told him that, under the facts which could be proved, he was liable, and advised him to settle the debts without further litigation. Davis did so, but, as he had been summoned to answer before the referee for a certain amount of goods of the bankrupt, which he had withheld, it was agreed that he should pay the value of those goods, $181, to the referee, and that it should be distributed through him to the creditors. The balance he paid to Yancey, Reeder & Casey, who executed to him a receipt for the same in the following words:

"$4,740.67.                    Batesville, Ark., July 11, 1902.

    "Received from W. E. Davis the sum of forty-seven hundred and forty dollars and sixty-seven cents in full settlement of

the following accounts, and notes proved in bankruptcy in the estate of R. L. Maxey:

| | |
|---|---:|
| .   Talley Lumber Company..........$68.00 | $   64.35 |
| Charles Mosby ................. | 37.50 |
| J. B. Younger ................. | 541.32 |
| Seaton & Lindsay .............. | 32.68 |
| L. R. Simpson ................. | 59.15 |
| White River Grocery Company..... | .   234.31 |
| Bank of Batesville.............. | 1,758.92" |

Then follow the names of other creditors represented by the attorneys and amounts due each; the receipt being signed. "Yancey, Reeder & Casey, attorneys for the above mentioned creditors.".

The attorneys then deducted 25 per cent. of the amount collected for their services in collecting, and paid the balance to the creditors. To the bank they paid $1,309.19, which sum it credited on the note. Afterwards, the bank demanded of the sureties that they pay the balance due on the note, and upon their refusal to do so brought this action at law to recover the same.

The defendants appeared, and for answer admitted the execution of the note. But they alleged that the money was borrowed by Maxey to use in the mercantile business carried on in his name at Penter's Bluff, and was so used, but that the business, though carried on in the name of Maxey, in fact belonged to W. E. Davis, and that Davis was in law liable for the debts of that business, including the debt of the bank for borrowed money. That Davis, after Maxey had become bankrupt, agreed with Yancey, Reeder & Casey that he would pay in full all claims of creditors of R. L. Maxey represented by them. That said attorneys represented the plaintiff, Bank of Batesville, and received from Davis payment of the balance due on said note in full, and that the bank, with full knowledge that such attorneys had acted for them in such settlement, received a part of said money, and thus ratified and confirmed their action. They further set up that, under the circumstances, the bank was estopped to deny that Yancey, Reeder & Casey were its attorneys in that settlement. Wherefore they alleged that

the bank was bound by the settlement, and could not recover in this action.

On the trial the court, at the instance of defendant, gave, among others, the following instruction:

"I. The jury are instructed, as a matter of law, that if a person adopts a transaction done in his behalf by an agent who had no authority to do it, he must adopt it in its entirety; he cannot adopt it in part, and repudiate it in part. And if the jury believes from the evidence that Yancey, Reeder & Casey accepted for the plaintiff the money paid by Davis, and that the plaintiff bank either accepted or retained a part of the money so received by said attorneys for it after it had notice that the said attorneys had acted for them in the premises, then this was a ratification of the acts of Yancey, Reeder & Casey in accepting said money, and plaintiff is bound thereby." The jury returned a verdict in favor of the defendant, and the bank appealed.

*S. D. Campbell, J. C. Yancey* and *Samuel M. Casey,* for appellant.

The evidence fails to show any agency of Yancey, Reeder & Casey to collect this note for appellant under the evidence. This is not a case of agency by estoppel, and the court erred in so instructing the jury. 75 N. Y. 547; Big. Estop. 434; 35 Ark. 376; *Ib.* 293; 36 Ark. 114; 66 Am. D. 478; 56 Mich. 182; Abb. Civ. Trial Brief, 324; 48 Ark. 445. Agency can not be proved by the declaration of the agent himself. 46 Ark. 228. The court erred in refusing to direct a verdict for appellant. 65 Ark. 329; 55 Ark. 347; 21 Ark. 329; 29 Ark. 497; 67 Ark. 223; 21 Ark. 395; 64 Ark. 119; 57 Ark. 468; 70 Ark. 386.

*W. S. Wright,* for appellees.

RIDDICK, J., (after stating the facts.) This is an action by a bank against a number of defendants, who were sureties on a promissory note of one Maxey executed by him to the bank for a loan of $2,000. The defendants for answer set up that the note had been paid by one W. E. Davis, who was not a party to the note. It is admitted that Davis did pay to Yancey, Reeder & Casey, a firm of attorneys, an amount equal to the balance due on this note, and that they gave him a receipt for the same in full as attorneys for the bank. It is also

admitted that, after deducting a fee for making the collection, these attorneys paid the balance of the money to the bank, which credited the net amount paid to it on the note. The net amount paid the bank left a balance unpaid on the note equal to the amount retained by the attorneys for a fee, and the decision in this case is narrowed down to the question as to whether the attorneys represented the bank in making the collection from Davis, so that a payment to them was in law a payment to the bank, or whether, if they did not represent the bank, the circumstances are such as to estop the bank from denying that they did represent it, or to show that the bank ratified the act of the attorneys in making the settlement with Davis. The evidence showed that Maxey, the principal in the note, had failed in business, and was a bankrupt at the time the note became due. Though Maxey had failed, the sureties on the note were solvent, and made it perfectly good. But the bank, at the request of Maxey, filed the note with the referee in bankruptcy, in order that it might receive its proportion of the bankrupt's estate, and to protect the sureties to that extent. A small amount was paid on the note from the assets of the estate, but a considerable sum remained due for which the sureties were liable to the bank. While matters stood in this condition, Yancey and one Adams, manager of the White River Grocery Company, a creditor of Maxey, had a meeting at Penter's Bluff with Maxey and two of the sureties on the note of Maxey to the bank. Maxey divulged facts which tended to show that one Davis was a secret partner in the mercantile business carried on by Maxey, and that Davis was liable for debts contracted in the course of that business. Now, the bank was not interested in this matter, for the sureties on its note made it perfectly good. And while the evidence shows that the firm of Yancey, Reeder & Casey, of which Yancey was a member, was retained by the bank generally, they had no authority to undertake collection of claims held by the bank unless they were especially requested to do so. They had never been requested to collect this note, further than to have it allowed by the referee as a claim against the estate of Maxey in bankruptcy. At the time of this meeting at Penter's Bluff, the note was in the possession of the bank, and Yancey had no authority from the bank to collect it or to take steps for

that purpose. He did not go to Penter's Bluff at the instance or request of the bank, or to represent it, but as the attorney for Adams, the manager of the White River Grocery Company, and as the attorney for other creditors of Maxey whose claims he held for collection. These debts were unpaid, and Yancey was interested in getting information that would show that Davis, a man of means, was liable for the payment of them. The two sureties present were interested; for, if the amount due the bank from Maxey could be collected from Davis, they would be relieved from liability to pay it. The outcome of this meeting was an understanding that Yancey should go ahead and get up the evidence against Davis, and, if possible, compel him to pay these debts, including the debt due the bank. It is unnecessary for us to consider whether this understanding, taken in connection with the subsequent action of Yancey in collecting these debts from Davis, and to that extent relieving the sureties of this debt, was sufficient to make them liable for a fee for Yancey's services. We may assume that these two sureties had no thought of such a thing; that, knowing that Yancey represented a number of creditors who had claims against Maxey, and supposing that he also represented the claims of the bank, they expected that he would look to these parties, and not to them, for his fee. Whether this was so or not is immaterial here, for, as before stated, the evidence shows that the bank had not authorized Yancey to collect this debt as their attorney or agent. He did subsequently collect money to the amount of these debts from Davis, and gave him a receipt in full against them, signing thereto the name of his firm as attorneys for all the creditors represented, including the bank. The receipt that these attorneys gave tends to show that they were assuming to act for the bank in making the collection, but they say that the receipt was given in that form to identify the different debts for which the money was paid, and to satisfy Davis. However that may be, the receipt is no evidence against the bank until it is shown that the attorneys were attorneys for the bank, and this, as before stated, is not shown. A payment by Davis to these attorneys was not, under the facts of this case, a payment to the bank, and did not affect the debt due the bank.

It is contended with much force that the bank ratified the act of the attorneys by afterwards receiving the money. We are not able to agree with this contention. No express ratification is claimed, and to amount to an implied ratification the act of the bank must be done with the full knowledge of the facts, and must be inconsistent with any other reasonable hypothesis than that of approval of the acts of the attorneys who assumed to act as its agent. But there is nothing to show that, at the time the bank accepted this payment, it had notice that these attorneys had assumed to act for it, and had given Davis a receipt in full for this debt. The attorneys testified that they did not act for the bank, but for the sureties; and as the bank had not authorized them to collect the note, the mere payment by them to the bank of money collected from Davis did not notify the bank that they had assumed to act as its agents and had made a full settlement of the debt with Davis.

If the bank was seeking to hold Davis liable for the balance due on the note, it is doubtful if it could retain the money secured by the attorneys from him by executing this receipt in full, and at the same time reject the settlement. But Davis was not a party to this note, and the bank has never asserted that he was liable for it. This is not an action against Davis, but against the parties to this note, with whom no settlement was made, and who have paid nothing on the note. If, after discovering that a receipt in full had been executed by these attorneys to Davis for this debt, the bank had refused to retain the money and returned it to him, this might have resulted in injury to the sureties, and in the end the bank might have been compelled to shoulder the loss, if any had resulted from the return of the money. Davis was not asking for a return of the money; and as a return of it to him might result in injury to the sureties or the bank, the only safe course for the bank to pursue was to hold the money. Under these circumstances, the failure of the bank to return the money is not inconsistent with a denial on its part of the right of these attorneys to collect the money for the bank, or their right to give a receipt in full against the note. As the bank could not return the money without risk of injury to itself or the sureties, its retention thereof was not in law a ratification of the act of the attorneys.

*Martin* v. *Hickman,* 64 Ark. 217; *Brown* v. *Wright,* 58 Ark. 20; *Bryant* v. *Moore,* 26 Me. 84, 45 Am. Dec. 96; *Thatcher* v. *Pray,* 113 Mass. 291; 1 Clark & Skyles, Agency, page 327.

It follows from what we have said that instruction No. 1, and other instructions given at the request of the defendants, in which the court told the jury in substance that if the bank retained the money paid to it by Yancey, Reeder & Casey after notice that these attorneys had assumed to act for the bank in the settlement made with Davis it would be a ratification of the acts of the attorneys in making the settlement, were, in our opinion, erroneous and misleading. For, while this instruction, abstractly considered, may be correct in stating that a principal cannot ratify a part of the transaction and reject another part, yet, under the facts here, it is misleading. As the act of the bank in receiving this money from the attorneys who had collected it from Davis did not mislead or injure the defendants in any way, but, on the contrary, was a direct advantage to them, to the extent of such payment, we see no grounds of estoppel.

On the whole case, we are of the opinion that the facts in evidence made out a clear case in favor of the bank, except as to $34.80, the amount paid by the bank to the attorneys out of the $384 collected through the bankruptcy proceedings. The evidence shows that these attorneys were requested to look after this matter in the bankrupt court by the cashier of the bank. He did it at the suggestion of Maxey to protect the sureties on Maxey's note. The collection of the $384 in this way resulted in a benefit to the sureties, to that extent; but, as they did not authorize this step to be taken for them, they cannot be charged with the expense of the collection. The bank authorized it, and a payment of that amount to the attorneys was a payment to the bank. But, as we have said, the collection from Davis was not authorized by the bank, and it is responsible only for the part of that collection that came to its hands. For the reasons stated, the case is reversed, and the cause remanded for a new trial.