YOUNG, TRUSTEE v. FOWLER.

Opinion delivered January 28, 1918.

1. ATTORNEY AND CLIENT—EMPLOYMENT OF ADDITIONAL COUNSEL.—An attorney has no implied authority to employ additional counsel at the expense of his client, and it is not within the apparent scope of his authority.

2. ATTORNEY AND CLIENT—EMPLOYMENT OF ATTORNEY—FEES—RATIFICATION.—Where a litigant knows that his attorney is being assisted in a trial by another attorney, he will not be liable to the latter for a fee, merely because of such knowledge.

3. ATTORNEY AND CLIENT—EMPLOYMENT OF ATTORNEY—FEES.—A certain bank becoming insolvent, it was taken over by the State Bank Commissioner and one C. was placed in charge of its assets. At the same time the L. Co. became insolvent and C. was made trustee in bankruptcy of its assets. Appellant, as trustee, purchased the assets of both the bank and the L. Co. Appellee had been employed by the Bank Commissioner, and was paid a fee by him. Appellee also did certain work for appellant, which he alleged was beneficial to appellant, and he sued appellant for a fee. *Held,* under the facts, that appellee had never been employed by appellant, and was entitled to no fee from him.

4. APPEAL AND ERROR—CHANCERY JURISDICTION—COMPLAINT BY PLAINTIFF.—Where appellee brought an action in chancery, he can not complain of a decision in equity against him.

Appeal from Benton Chancery Court; *Ben F. McMahon,* Chancellor; reversed.

*Duty & Duty,* for appellants. *W. N. Ivie,* of counsel.

1. This suit was filed under the attorney's lien Act. Acts 1909, p. 892. No cause of action was stated and the demurrer should have been sustained. 65 Ark. 495; 64 *Id.* 510; 103 *Id.* 103. Plaintiff performed no service in the Benton chancery court and had no lien. 27 Ark. 369; 15 S. W. 363; 55 Ark. 546. No relief should have been given, as no equitable jurisdiction was shown. 16 Cyc. 111-127; 37 Ark. 164; 105 U. S. 430; 5 Fed. 665; 10 R. C. L. 373; 139 S. W. 715; 1 Ark. 31; 14 *Id.* 346; 87 *Id.* 206; 73 *Id.* 462; 74 *Id.* 484; 109 *Id.* 274; 92 Fed. 710; 119 U. S. 325; 101 Fed. 329; 106 *Id.* 103; 138 U. S. 146; 221 Fed. 178.

The court was without jurisdiction to render judgment for services in another suit outside the one in which a lien is sought. 66 Ark. 190; 49 S. W. 822.

2. The lien must be enforced in the trial court. 103 Ark. 306.

3. Plaintiff was attorney for the trustee in bankruptcy and not for defendants. 20 Am. Bank. Rep. 22.

4. There was no contract to pay for his services. The law implies no contract to pay because one receives benefits from the services of an attorney, unless he is employed as such. 76 Ark. 115; 5 L. A. Ann. 4818; 20 So. 862; 56 Ark. 382.

5. The bankruptcy court is the only court that has jurisdiction. An attorney cannot bind his client by the employment of another attorney. 6 C. J. 668; 28 Ark. 95; 10 *Id*. 18. There was no ratification. 6 C. J. 669.

6. The jurisdiction was only in the bankruptcy court. 4 Am. Bank Rep. 319; 159 U. S. 575; 113 *Id*. 127; 3 A. & E. Enc. Law (2 ed.), 447-452; 18 Am. Bank Rep. 450.

7. The decree is clearly against the preponderance of the testimony.

*Rice & Dickson,* for appellee.

1. The court had jurisdiction. It properly gave judgment for the fee but improperly refused to declare a lien. 31 Ark. 422; 32 *Id*. 562; 51 *Id*. 259; 16 Cyc. 127-131; 52 Ark. 411. The main purpose of the suit was to enforce a lien, but the finding for the debt was incidental thereto. 56 Ark. 392; 14 *Id*. 346; 76 Va. 12; 49 W. Va. 181; 14 Ark. 50. See also, 34 Ark. 419; 2 Wheat. 290; 98 Iowa 468; 37 Ark. 186; 74 *Id*. 85; 10 R. C. L., § 122, etc.

2. Appellee should have been decreed a lien. 123 Ark. 473; 117 *Id*. 513. Appellee was employed as an attorney; appellant accepted his services and received benefits and also ratified same. A lien should have been declared. 76 Ark. 121; 42 *Id*. 402; 36 *Id*. 591; 4 Cyc. 926; 34 Ga. 382; 4 Cyc. 986, 1008.

McCULLOCH, C. J. This is an action instituted in the chancery court of Benton County by appellee as a member of a firm of attorneys composed of appellee and W. N. Ivie, against appellant Young as trustee for the Bankers Trust Company of Dallas, Texas, to recover one-half of a fee alleged to have been earned by said firm of attorneys by services rendered in certain litigation prosecuted in that court and in the United States District Court for the Western District of Arkansas at Fort Smith, at the instance and for the benefit of appellant. A lien was asserted on property alleged to have been gained by appellant as a result of said litigation. In the original complaint Mr. Ivie was named as defendant by reason of the dissolution of the firm and his refusal to join in the suit as plaintiff, but in an amended complaint subsequently filed by appellee, Mr. Ivie was joined as plaintiff without his consent. As the suit was prosecuted without the consent, and apparently over the objection of Ivie, he must be and was by the lower court, treated as a defendant in the action. He testified as a witness in the case, and his statement was that his firm was not employed by appellant Young and was not entitled to claim a fee from Young. It is not claimed that there was an express contract as to the amount of the fee, but appellee alleged in the complaint that the value of the service rendered by his firm for appellant Young was the sum of $35,000, and that he was entitled to one-half of the fee.

Appellant denied that Fowler & Ivie were employed at all by him, or that they rendered any service for his benefit under circumstances from which a contract to pay a fee should be implied. The chancery court decided in favor of appellee as to the right to recover a fee and fixed the amount of his share at $5,000, but held that he was not entitled to a lien on the property described in the complaint.

The Bank of Rogers, a banking corporation doing business at Rogers, Arkansas, became insolvent, and was taken over by the State Bank Commissioner, who placed a special deputy, Mr. Perry N. Clark, in charge of the

assets of the bank to wind up its affairs, as authorized by statute. Among the assets of the defunct Bank of Rogers were certain second mortgage bonds of the Ozark Land & Lumber Company, another domestic corporation, of the par value of about $86,000, and also unsecured obligations of said corporation amounting to about $68,000. The Ozark Land & Lumber Company was operating in Benton County, Arkansas, and its principal assets consisted of 12,500 acres of timbered land and a short line railroad. It, too, became insolvent and was put into bankruptcy by its creditors. Mr. Clark, the Special Deputy State Bank Commissioner, being elected trustee for the estate of the bankrupt. In addition to the bonds of the Ozark Land & Lumber Company held by the Bank of Rogers, there was a prior bond issue of $150,000 held by certain parties in the East represented by a committee composed of Messrs. Johnson, Bird, Potter and Smith. These bonds were designated as ''first mortgage bonds,'' and when issued constituted a first lien on the assets of said corporation, a mortgage on the property of the corporation having been given to secure the same, but that priority was contested by other creditors on the ground that the holder of the bonds had accepted from the Ozark Land & Lumber Company a large amount of stock in the corporation as a bonus in the purchase of the bonds, and it was insisted by the State Bank Commissioner and other creditors of the Ozark Land & Lumber Company that the holders of the first mortgage bonds should be required to pay for the shares of stock received as a bonus before being allowed priority in their claim against the estate of the bankrupt.

On October 6, 1915, the State Bank Commissioner and Mr. Clark as trustee in bankruptcy of the estate of the Ozark Land & Lumber Company, instituted an action in Benton Chancery Court against the holder of the said first mortgage bonds, alleging that said bondholders had accepted as a bonus from the Ozark Land & Lumber Company shares of stock of the par value of $150,000, which had never been paid for, and should be treated as a set-off

against the bonds.   The prayer of the complaint was that
the second mortgage bonds held by the Bank of Rogers be
declared a prior lien on the property of the Ozark Land &
Lumber Company, which was mortgaged to secure the
bonds, and that the lien be foreclosed. Duty & Duty, a firm
of attorneys of Rogers, Arkansas, were the regular attor-
neys for the Bank Commissioner in the management of the
affairs of the defunct bank, and they, together with Fowler
& Ivie, who were specially employed by the Bank Commis-
sioner, instituted that suit.   The holder of the first mort-
gage bonds appeared in that suit and moved to dismiss it,
and on January 4, 1916, the court entered an order stay-
ing the proceedings in the suit until the bankrupt court
should release the real estate from its jurisdiction.  Noth-
ing further was done in that case.  The Bank Commis-
sioner, with the approval of the Benton Chancery Court,
paid to Fowler & Ivie the sum of $350, as fee for their
services in the above mentioned suit.   On January 22,
1916, appellant Young, as trustee for the Bankers Trust
Company, of Dallas, Texas, purchased from the Bank
Commissioner the undisposed of assets of the Bank of
Rogers, including the claims against the Ozark Land &
Lumber Company, and the sale was duly confirmed by the
Benton Chancery Court, under whose orders the affairs
of the bank were being administered.   That was the first
appearance of appellant or of the Bankers Trust Com-
pany in the proceedings, and it has not been shown in the
record why the trust company or its trustee made the
purchase, or that they were or had been otherwise inter-
ested in the affair.

On November 12, 1915, the holders of the first mort-
gage bonds of the Ozark Land & Lumber Company filed
in the bankruptcy court, where the proceedings against
that corporation were pending, their claim against the
estate of the bankrupt on the bonds held by them, and
asked that the claim be allowed as a preferred one.   The
trustee filed objections to the allowance of that claim,
basing his objections on several grounds, one being the
same set forth in the complaint of the Bank Commissioner

and the trustee in the suit instituted in the Benton Chancery Court, to the effect that the claimants had accepted, as a bonus, shares of stock of the corporation equal in face value to the amount of the bonds. The trustee also presented a petition to the referee in bankruptcy asking for authority to employ an attorney to represent him in the matter of his objections to the allowance of the claim of the first mortgage bondholder, and stating that he had selected Fowler & Ivie as the attorneys to be so employed, who he stated in his petition had "agreed to prosecute said objections to a determination, conditioned that if enough is not recovered and saved to the estate to warrant allowance and payment of attorney's fees, that they receive no compensation for their services." This petition, it is proved, was presented to the referee after consultation between him and appellee. The referee granted the petition and made an order authorizing the employment of Fowler & Ivie as attorneys to represent the trustee on the terms and conditions named in the petition.

The matter of allowance of the claim of the first mortgage bondholder, and the trustee's objections thereto, came up for hearing before the referee and the objections of the trustee were sustained and the claim was disallowed. The claimants brought the matter before the Federal District Court for review and the court reversed the order of the referee and allowed the claim. An appeal was prosecuted from that judgment to the Circuit Court of Appeals and the cause was pending there on appeal when the present case was tried below. Fowler & Ivie represented the trustee in those proceedings in accordance with the employment authorized by the referee. The record shows that they appeared only for the trustee. Neither appellant Young nor the Bankers Trust Company of Dallas appeared as parties to the proceedings. The trustee presented a petition to the bankruptcy court for sale of the bankrupt estate. This was done in February, 1916, but nothing was done in the matter until September, 1916, when the interested parties appeared before the court and agreed upon a sale of the property to

appellant Young as trustee for the price of $180,000, which included the sum of $5,000 expressly mentioned as a sum to cover the expenses of administering the estate. The sale was recommended by the referee and the court made an order authorizing it and afterward approved the sale. The order of approval was rendered by the court on October 11, 1916. The sale was approved by the court on condition that the proceeds of the sale be held subject to the determination of the controversy over the allowance of the claim of the first mortgage bondholder, the proceeds of sale to stand in place of the property on which the bondholder asserted a prior lien. Appellee contends that his firm represented appellant by special employment, as well as the trustee in bankruptcy, throughout the proceedings in the Federal court, and that appellant made a profit of more than $200,000 on the purchase of the property. He took that fact into account in fixing the amount of his fee. Immediately after the consummation of the sale appellee made request of appellant for payment of the fee which he claimed for his firm, and upon appellant's refusal or failure to pay he instituted this action.

The contention of appellee is that the findings of the chancellor in his favor can be sustained on either of three grounds: (1) That there was an express contract between appellant and appellee for the employment of his firm; (2) that appellant accepted the benefit of the firm's services under circumstances from which a contract to pay will be inferred; and (3) that appellant, with full knowledge of the acts of his attorneys, Duty & Duty, in employing appellee's firm, ratified the same.

The findings of the chancellor in appellee's favor were general, so each of the grounds must be examined to ascertain whether or not either is sustained by the evidence.

A finding in appellee's favor that there was an express contract of employment is clearly against the preponderance of the evidence. The testimony of appellee himself is substantially all there is in support of his con-

tention on that issue. The testimony of witness Clark (the trustee in bankruptcy) does not tend to establish an express contract, except as a circumstance, for he only knows that appellee's firm performed services in the case in the Benton Chancery Court, and in the bankruptcy proceedings, in connection with Duty & Duty, the attorneys who were employed by the Bank Commissioner, as well as by appellant. The performance of those services were, however, entirely consistent with the contention of appellant that Fowler & Ivie were representing the Bank Commissioner and the trustee in bankruptcy, and that he did not employ them.

Appellee testified that shortly after appellant purchased the assets of the Bank of Rogers, Mr. J. R. Duty, of the firm of Duty & Duty, who were the attorneys for appellant, employed the firm of Fowler & Ivie to continue in the litigation as appellant's attorneys. Mr. Duty denied that statement in his testimony, and stated that he merely told appellee that if the firm of Fowler & Ivie continued in the litigation pending in the Federal court and there was a recovery, he (Duty) would recommend to the court an allowance of a liberal fee. He says that he stated to appellee at the time that he had not consulted his clients as to that matter, and he also testified that he never informed his client of his conversation with appellee. It should be remembered that at that time the suit in the Benton Chancery Court was at an end, and the only litigation then pending in the Federal court was between the first mortgage bondholders and the trustee in bankruptcy as the representative of all the creditors of the bankrupt corporation. Appellant was not a party in either case. It is true that he was the principal creditor, and to that extent he was interested more than any one else, but he had the right to stand behind the trustee who represented all of the creditors without personally appearing in the litigation. Personal liability for payment of the fee could not be imposed upon him without his consent merely because he was the principal beneficiary. Mr. Ivie testified that his firm was not employed by appellant and that

they appeared in the litigation in the Federal court only as attorneys for the trustee. The undisputed evidence is that Fowler & Ivie appeared in the proceedings only as the attorneys for the trustee, and that they did so under an express agreement that they were not to receive any fee unless there was a recovery. Appellant testified that he did not employ appellee's firm and had no information that they had been employed by Mr. Duty, or that they were acting for him in the litigation.

(1) It is undisputed that appellant did not come to Arkansas until October, 1916, when he came to close up the purchase of the Ozark Land & Lumber Company property, and that he had no actual notice that Fowler & Ivie had been employed as his attorneys, or that they were acting as his attorneys. An attorney has no implied authority to employ additional counsel at the expense of his client, and it is not within the apparent scope of his authority. *Danley* v. *Crawl*, 28 Ark. 95; 1 Thornton on Attorneys, § 210.

We are of the opinion, therefore, that a finding in appellee's favor that he was employed by appellant, if such was the finding of the court, is against the clear preponderance of the testimony, and can not be sustained. It may be said that all of the witnesses who testified on that issue were, in a measure, interested ones, either directly or indirectly; but conceding that to be true, none are more interested in the result of this litigation than appellee himself, nor even as much, and appellee's unsupported testimony can not be held to be preponderating because of the indirect interest of the witnesses on the other side of the controversy. Treating the testimony as all of a kind—that is to say, the testimony of interested witnesses—that does not increase the comparative force of appellee's testimony so as to attribute to it preponderating effect.

(2-3) Nor will a contract to pay a fee be implied in this case from the fact that appellee's firm performed services in the Federal court litigation which resulted, or may result in benefit to appellant. This is so for the rea-

son, among others, that Fowler & Ivie performed the services under an express contract with the trustee, and their services are referable to that contract. *Davis* v. *Trimble,* 76 Ark. 115.

Neither was there a ratification of the employment of appellee's firm, if they were employed or assumed to act in the interest of appellant. The services performed by appellee's firm were consistent with and referable to their contract with the trustee, and appellant had no actual notice that they were assuming to act for him. Under those circumstances, there was no ratification. *Davis* v. *Trimble, supra; Bank of Batesville* v. *Maxey,* 76 Ark. 472; 1 Thornton on Attorneys, § 213. "But the mere failure expressly to disavow the acts of an attorney will not, in itself, be a conclusive ratification thereof," said Mr. Thornton in the above citation, "thus it has been held that knowledge by a client that his attorney is being assisted by associate counsel is not enough to show that the client ratifies the employment, on his behalf, by his counsel of such attorney; such assistance being consistent with the employment of the attorney to assist the counsel at the latter's expense."

Appellee rendered his services in the Federal court under an express contract with the trustee in bankruptcy for a contingent fee, based on the final recovery for his client. That litigation had not been finally determined in the Federal Court of Appeals, and appellee had by his own admission abandoned the further prosecution of the appeal. He must abide his contract, and can not under the circumstances of this case claim a fee from appellant merely because the latter may have received benefit from the litigation, or has reaped profit from the purchase of the assets of the bankrupt corporation.

(4) The findings of the chancellor on the issues of fact being against the preponderance of the testimony, it is unnecessary to discuss the question raised as to the cause being improperly tried in the chancery court instead of the circuit court. Appellee having invoked the aid of the chancery court in the trial of the issue, he can not com-

plain of a decision against him. *Cribbs* v. *Walker,* 74 Ark. 104.

The decree is, therefore, reversed and the cause is dismissed.

HUMPHREYS, J., not participating.