POTASHNICK LOCAL TRUCK SYSTEM, INC., *v.* ARCHER.

4-7344                                            179 S. W. 2d 696

Opinion delivered May 1, 1944.

*John S. Mosby,* for appellant.

*W. Leon Smith,* for appellee.

McFADDIN, J.   This action was instituted under the Federal Fair Labor Standards Act of 1938. Appellant

operates a motor truck line from points in Missouri to and from points in Tennessee, through Blytheville, Arkansas; and appellee was employed by appellant at Blytheville, Arkansas.

Appellee, as plaintiff, filed suit against appellant, as defendant, for alleged wages for overtime, etc., due under the Federal Fair Labor Standards Act of 1938 (See U.S.C.A. Title 29, Chapter 8.) Appellee claimed he received only $24 per week from August, 1942, to February, 1943, and should have received forty cents per hour for the base hours of each week and sixty cents per hour for all overtime. For defense, appellant claimed that any and all services of the appellee were services that were regulated by the Federal Motor Carrier Act (U.S.C.A. Title 49, § 301 ff.), and therefore exempt-from the Fair Labor Standards Act. At the trial the parties stipulated as to the amount the plaintiff should recover, if anything; but any right to recover was sharply contested. There was a jury trial and consequent judgment for plaintiff; and defendant has brought this appeal, assigning in the motion for new trial, and presenting here, the points herein mentioned.

I. *Did the Plaintiff's Case Come Under the Fair Labor Standards Act or the Motor Carrier Act?*

This is a threshold question. If plaintiff's work was within scope of the Fair Labor Standards Act then there must be an affirmance in this case in the absence of error on other points. But if plaintiff's work came within the scope of the Motor Carrier Act then the cause at all events must be dismissed.

The Fair Labor Standards Act of 1938 (U.S.C.A. Title 29, § 201 ff.) provides (§ 206 ff.) for a minimum wage and maximum hours and for overtime wage and applies to employees engaged in commerce (as that term is defined in the Act), but contains the exception (in § 213) that the provisions of the Act as to maximum hours should *not* apply to "any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of § 304 of Title 49 . . ."

This Title 49, § 304 of U.S.C.A. is a part of the Motor Carrier Act of 1935, and made it the duty of the Interstate Commerce Commission to regulate common carriers by motor vehicle and to that end empowered the Commission to establish reasonable "requirements with respect to . . . maximum hours of service of employees, and safety of operation and equipment."

In *United States* v. *American Trucking Associations*, 310 U. S. 534, 60 S. Ct. 1059, 87 Law Ed. 1345, the Supreme Court of the United States on May 27, 1940, considered the Fair Labor Standards Act as limited by § 213 *(supra)*, and considered the Federal Motor Carrier Act as limited by § 304 thereof, and considered the powers of the Interstate Commerce Commission to administer the Motor Carrier Act, and held that only those employees of Motor Carriers were governed by the Federal Motor Carrier Act as to "hours of service of employees," who were "concerned with the safety of operations," saying, "Our conclusion, in view of the circumstances set out in this opinion, is that the meaning of employees in § 204 (A) (1) and (2) is limited to those employees whose activities affect the safety of operation. The Commission has no jurisdiction to regulate the qualifications of hours of service of any others." In other words, the Supreme Court of the United States in effect held that the employees would be governed by the Fair Labor Standards Act unless they were specifically governed by the Motor Carrier Act and only those whose activities actually affected the safety of operation of Motor Carriers, come under the Motor Carrier Act.

Because of the said opinion of the Supreme Court of the United States the Interstate Commerce Commission in *Ex Parte* No. MC-2 in the matter of maximum hours of service of Motor Carrier employees, 28 Interstate Commerce Commission Reports, Motor Carrier Cases, p. 125, on March 4, 1941, gave consideration to what particular employees came within the "safety of operations" of Motor Carriers and held:

"We have concluded that we should not assert jurisdiction as to employees who spend an unsubstantial part

of their time in performing duties which affect the safety of operation of motor vehicles. We therefore conclude that under said section 204 (a) we have power to establish qualifications and maximum hours of service with respect only to employees who devote a substantial part of their time to activities which directly affect safety of operation. Our task is thus narrowed to determining which employees of common and contract carriers and of private carriers of property by motor vehicle, engaged in interstate or foreign commerce, fall within that category."

The Interstate Commerce Commission then in a very exhaustive opinion held that (1) mechanics were concerned with the safety of operation, but that other garage workers were not; and (2) that loaders of trucks were concerned with the safety of operation; and (3) that dispatchers "engage in no activities which directly affect the safety of motor vehicles."

In the case of *Overnight Motor Transportation Co.* v. *Missel*, 316 U. S. 572, 62 S. Ct. 1216, 86 L. Ed. 1682, (decided June 8, 1942) the Supreme Court of the United States in Note 20 recognized the aforesaid mentioned opinion of the Interstate Commerce Commission and held that a rate clerk of a motor transportation company was nevertheless entitled to relief under the Fair Labor Standards Act. There are decisions of other Federal Courts after the Overnight Motor Transportation case bearing on the question. *Southland Co.* v. *Bayley*, 319 U. S. 44, 63 S. Ct. 917, 87 L. Ed. 1244; *McKeown* v. *Southern California Freight Forwarders*, (U. S. Dist. Ct. in California), 49 Fed. Supp. 543 and 52 Fed. Supp. 331; *Anuchick* v. *Transamerican Freight Lines* (U. S. Dist. Ct. in Michigan) 46 Fed. Supp. 861; *Hutchinson* v. *William C. Barry, Inc.*, (U. S. Dist. Ct. in Mass.), 50 Fed. Supp. 292.

We reach the conclusion that appellee is entitled to relief under the Fair Labor Standards Act unless a substantial part of his work was within the scope of the Motor Carrier Act, and that the test of whether he comes under the Motor Carrier Act depends on the particular

duties that the plaintiff actually performed; and that it was therefore proper to show the duties the plaintiff actually performed, to see whether a substantial part of his work was under the Motor Carrier Act.

## II. *The Work Performed by the Plaintiff.*

On appeal it is the duty of this court to give the evidence its strongest probative force for appellee. *Davis v. Trimble,* 76 Ark. 115, 88 S. W. 920; *St. Louis, I. M. & S. Ry. Co.* v. *Coleman,* 97 Ark. 438, 135 S. W. 336; *Oviatt* v. *Garretson,* 205 Ark. 792, 171·S. W. 2d 287, West's Arkansas Digest, ''Appeal and Error,'' Key No. 1001. With this rule in mind we examine to see if there is substantial evidence to sustain the verdict in appellee's favor; and that verdict was, in effect, that no substantial part of the plaintiff's work was under the Motor Carrier Act. The plaintiff testified that he was in full charge of all night duties in the office; and that he (1) checked the trucks in and out, (2) did the clerical work on the way bills, (3) was the night manager, (4) acted as filing clerk, filing all the bills and records that had accumulated each preceding day (sometimes this one activity would require six to eight hours each night), (5) served as the night dispatcher of the various trucks which passed through Blytheville to and from Missouri and Tennessee and intermediate points, (6) billed out the local accumulation of shipments to the six or seven trucks passing through Blytheville each night, (7) checked the mileage on trucks and made written report of same, (8) answered all telephone calls and (9) did anything else at night that the manager would have done in the daytime except to answer the mail and write letters. In addition to all of these nine duties he (10) helped another man in loading and unloading trucks where there was any loading and unloading to do. This work done under ''(10)'' above would place him under the Motor Carrier Act. Each and all of the other nine duties would place him under the Fair Labor Standards Act. The test, as previously pointed out, was whether the 10th duty constituted a substantial part of the plaintiff's work.

From enumeration of the various duties it is evident that the plaintiff made a case to go to the jury as to whether the 10th duty constituted a substantial part of the plaintiff's work; and we therefore hold that the trial court correctly overruled the appellant's motion for an instructed verdict; and we furthermore hold that there is substantial evidence to support the jury's verdict that the 10th duty did not constitute a substantial part of the plaintiff's work. The effect of the verdict of the jury was to place the plaintiff under the Fair Labor Standards Act rather than the Motor Carrier Act; and we find there was substantial evidence to sustain the verdict.

### III. *The Instruction.*

Finally appellant complains of the instruction that the court gave the jury which instruction reads as follows:

"If you find from a preponderance of the testimony in this case that the plaintiff was placed in charge of the branch office of the defendant in the City of Blytheville, Arkansas; and that in charge of such office the plaintiff actually performed services during such employment as were performed by the manager of said office during the day, and that the work he did in loading and unloading trucks was merely incidental to his employment, your verdict will be for the plaintiff.

"On the other hand, if you find that the main duty of the plaintiff, under his employment by the defendant, was that of loading and unloading trucks; and that he performed some clerical duties merely as an incident of loading and unloading trucks, and that such clerical duties were not a substantial part of his employment, your verdict will be for the defendant."

We are of the opinion that this instruction clearly presented to the jury the issue involved without any possibility of misunderstanding. The whole question to be decided by the jury was whether the loading and unloading was a substantial part of the plaintiff's duties or an unsubstantial part. This instruction stated that issue in plain words and the jury decided that the loading and unloading was *not* a substantial part of the plaintiff's activities and duties.

226

Before concluding the opinion we think it proper to remark that there is not raised on this appeal any question as to the amount of recovery, as that point was stipulated. Furthermore the question was not raised in this case as to whether the burden was on appellant to show appellee excluded from the Fair Labor Standards Act or whether the burden was on appellee to show himself to be entitled to the benefits of the Act; so we are not passing on that point. Neither was there any issue tendered that the plaintiff did not come within the purview of Interstate Commerce, so we are not passing on that question; and our decision in *Couch* v. *Ward*, 205 Ark. 308, 168 S. W. 2d 822 is not involved herein.

Finding no error the judgment of the circuit court is affirmed.