BERRYMAN v. CUDAHY PACKING COMPANY.

4-3604

Opinion delivered November 26, 1934.

*Robert Bailey,* for appellants.
*Hays & Smallwood,* for appellee.

MEHAFFY, J. The appellants began this action in the Pope Circuit Court against the Cudahy Packing

Company, a corporation, the Cudahy Packing Company of Louisiana, Ltd., and Claude Westerfield. The complaint alleged the injury and death of Robert Ross Berryman, by the negligence of the appellee through its agent and employee, Claude Westerfield. When the complaint was filed and summons issued against the Cudahy Packing Company, the summons was served on Claude Westerfield, agent. There was a second summons issued and served upon the Secretary of State, and the third summons was served upon the Auditor of State.

The Cudahy Packing Company of Louisiana, Ltd., filed an answer, and the suit was dismissed as to it. The Cudahy Packing Company, without entering its appearance for any other purpose, filed a motion to quash service of each summons.

It is the contention of the appellees that the order of January 11, 1934, is not a final order, and that therefore the question of whether service on Westerfield was valid is not before the court. They cite *Hogue* v. *Hogue,* 137 Ark. 485, 208 S. W. 579. It is true the court said in that case that, where the motion to quash the summons was denied, that was not a final order from which an appeal could be prosecuted, but the court also said: "On the other hand, if the trial court quashes the writ, the plaintiff may take an alias summons, and thereby waive objection to the judgment of the court; or he may rest upon the quashal of the writ and appeal from the judgment of the court quashing the summons and permitting defendant to go hence without day, or, what amounts to the same thing, dismissing the plaintiff's action."

The court also said in the same case: "The circuit court sustained the motion, and it was adjudged that the writ be quashed and that the defendant recover costs. The judgment was held to be final and appealable. On the question of practice the court said in effect that on the quashing of the writ the plaintiff may take an alias writ or he may rest and appeal."

In the instant case when the court made the order quashing the writ served on Westerfield, the appellants appealed. Of course the complaint could not be dismissed because two other summonses had been issued and

served, and there was a motion to quash the service of each of these, and, until those motions were passed on, the court could not dismiss the complaint. The order of the court was final and appealable. Of course, if appellants had procured an alias summons, this would have been a waiver of their objection to the court's order, but they did not do this. The other summonses had already been issued, and there was nothing appellants could do except to pray an appeal; but, if this order had not been final, it became final when the complaint was dismissed.

Appellees next call attention to the case of *Harlow* v. *Mason*, 117 Ark. 360, 174 S. W. 1163. The court in that case said: "There is a conflict in the authorities as to whether an order of a court quashing a summons is such a final order as that an appeal will lie, and there is some apparent conflict in the early decisions of this court upon that question."

The court in this case also said, in discussing other cases: "In both these cases however, as well as in that of the *State, use, etc.* v. *Adams,* [9 Ark. 33] it was decided that the legal effect of the judgment quashing the writ was a dismissal of the case. This being the effect of the judgment, the parties are necessarily dismissed from the court, and, unless the decision of the circuit court is reversed or set aside, there is no remedy afforded them."

When the court made its order quashing the writ served on Westerfield, appellants objected and prayed an appeal to the Supreme Court. The order made by the court in quashing this summons was all that could be made at that time, and the complaint was in fact thereafter dismissed. But the order quashing the summons put the appellants out of court so far as this summons was concerned.

It is next contended that the service on Claude Westerfield was not sufficient because Westerfield was a mere salesman for appellees. To support this contention they cite *W. T. Adams Machine Co.* v. *Castleberry,* 84 Ark. 573, 106 S. W. 940. In that case the court said: "There is no allegation in the complaint as to whether the appellant is a partnership, a foreign or domestic

corporation. * * * The summons was served as shown by the return, upon T. W. Barnes, agent. Barnes was only a traveling salesman. He had no control over the business of the corporation, and service upon him was not sufficient.''

Appellees next call attention to the case of *Arkansas Construction Co.* v. *Mullins,* 69 Ark. 429, 64 S. W. 225, and the case of *Lesser Cotton Co.* v. *Yates,* 69 Ark. 396, 63 S. W. 997. In the first case referred to, the court said: ''The character of the agent nowhere appears in the record, and the simple fact that he was agent (it may be without any representative character from which authority might and ought to be implied on his part to receive service) is not sufficient.'' In the Lesser Cotton Company case the contention was made that, unless the foreign corporation appointed an agent, no service could be had except by publication, and the court said: ''It is incredible that the Legislature should have intended to limit its own citizens to such an insufficient remedy, when the corporation is actually doing business in the territory, and is represented there by a manager or local agent.''

The next case referred to is that of *L. D. Powell Company* v. *Rountree,* 157 Ark. 121, 247 S. W. 389. In that case, which involved the sale of books, the court said: ''The recovery of the books under the McNeill contract amounted to a collection growing out of an interstate transaction. The collection was made in books instead of money, and we think the resale of them, in order to convert them into money, was a continuation of the interstate transaction.''

Appellees then call attention to the case of *Sellin* v. *Hessig-Ellis Drug Co.,* 181 Ark. 386, 26 S. W. (2d) 122. The court in that case, among other things, said: ''In the first place, it may be said that no effort was made to show that the traveling salesman had any special authority from his principal, and his authority was limited to receiving and transmitting orders.''

Section 1152 of Crawford & Moses' Digest reads as follows: ''Any and all foreign and domestic corporations who keep or maintain in any of the counties of this State

a branch office or other place of business shall be subject to suits in any of the courts in any of said counties where said corporation so keeps or maintains such office or place of business, and such service of summons or other process of law from any of the said courts held in said counties upon the agent, servant or employee in charge of said office or place of business shall be deemed good and sufficient service upon said corporations, and shall be sufficient to give jurisdiction to any of the courts of this State, held in the counties where said service of summons or other process of law is had upon said agent, servant or employee of said corporations.''

The evidence shows that Claude Westerfield, upon whom the summons was served, lives in Russellville, and has been traveling for the Cudahy Packing Company for about eight years; he owns his own car; makes all the principal towns in a number of counties; sells to different merchants; he goes to the place of business of the merchants; takes their order, and he sometimes takes orders over the telephone. If a new man or concern buys merchandise, Westerfield recommends the party to the credit department, and they usually carry out his recommendations. The merchandise is shipped to the merchants and is delivered generally in a truck, but the truck does not belong to the company. After he has sold merchandise, he then makes another trip over the route and collects for what he sold the previous week, and makes additional sales. If a merchant orders merchandise and refuses it when it arrives, Westerfield sells it to some other merchant; he collects and remits to the company. The company pays him a salary of $3,240, and they take out 60 cents a week for insurance. They also pay Westerfield 4 cents per mile for the use of his car, which he would not operate over the route if he were not working for the company. Westerfield's headquarters have been at Russellville for the eight years that he has been at work for the company. Westerfield goes wherever the business requires him to go, where he can sell merchandise or make collections. He sells on an average of 80 orders a week, and this runs from $2,000 to $3,000 a week. He recommends the products of the com-

pany, and assists in the business all over the territory during the whole year. If he gets a new customer he looks over the stock of goods, talks to him, and estimates the merchant's ability to pay, and then recommends to the company to sell him so much per week. If some one should order 100 pounds of lard and it should come by truck and the customer would not take it, Westerfield picks it up and resells it. He will take the merchandise in his own car and resell it. He has been doing this all the time. This happens about six or ten times a year. Westerfield also said that he would stop a shipment, keep the merchant from getting it if he thought he would not pay, and the company knew about this. He has an office in Russellville. The orders are made out at his office. About 10 of the customers out of the 80 remit direct to the company and the others pay him. The company has advised him not to carry any passengers in his car while he is selling their products. He said he is a salesman and a peddler; that he sells and collects. A sale is not complete until he collects for it. He is both a salesman and agent.

We think this evidence is sufficient to show that the appellee is doing business in the State of Arkansas and that the service on Westerfield was valid. He has an office where he takes orders over the telephone; any merchandise that is refused by the person to whom it was sold is taken by him and sold to others, or, as he says, "peddled to others."

Appellees contend that they were engaged in interstate commerce, and that Westerfield was merely a salesman. This would be true if Westerfield did nothing but receive orders and transmit them to the company in Kansas City, but, as we have said, he did more than this. Besides keeping an office where he received orders, in all cases where a purchaser declined to take the merchandise shipped to him, Westerfield repossessed the merchandise, and sold it just as any merchant in Arkansas would sell merchandise.

Doing business is defined in C. J. as follows: "Any transaction with persons or any transaction concerning

any property situated in the State, through any agency whatever acting for it within the State." 19 C. J. 384.

Since we hold that the Cudahy Packing Company is doing business in Arkansas, it is unnecessary to discuss or decide the questions as to the service of the other summonses.

The judgment is reversed, and the cause remanded with directions to overrule the motion to quash service.