OVIATT, ADMINISTRATOR, *v.* GARRETSON.

4-6930, 4-7057 Consolidated                171 S. W. 2d 287

Opinion delivered May 3, 1943.

794

*Moore, Burrow, Chowning & Hall, Henry Donham* and *Pat Mehaffy,* for appellants.

*J. H. Lookadoo,* for appellees.

McFADDIN, J. These cases grow out of a three-car traffic mishap which occurred on U. S. Highway No. 67 in Clark county, Arkansas. Since jury verdicts were for appellees, we recite the facts favorable to them. *St. Louis, I. M. & S. Ry. Co.* v. *Coleman,* 97 Ark. 438, 135 S. W. 338; *Davis* v. *Trimble,* 76 Ark. 115, 88 S. W. 920, and West's Arkansas Digest, "Appeal and Error," § 1001.

On the 20th day of September, 1941, George Garretson was with his daughter-in-law, Helen Irene Jones Garretson, who was driving a Pontiac car south on highway No. 67, about two miles south of Arkadelphia, Arkansas. The road is straight north and south, and almost level for more than three miles. The right-of-way of the Missouri Pacific Railroad Company is east of and adjacent to the highway. The railroad employees had started a grass fire on the right-of-way, and allowed the fire to spread from the right-of-way to the highway. This fire caused a dense pall of smoke to extend along the highway for a distance of about four hundred feet. A breeze blowing from the east caused the smoke to be on and over the highway so as to render vision almost impossible at times. The smoke would settle to the highway or become dissipated, as the wind subsided or blew. George Garretson and his daughter-in-law, traveling about forty miles an hour south on the highway, passed a Chevrolet car and trailer proceeding in the same direction and occupied by Mr. and Mrs. Paul Ruffing, who were driving about twenty or twenty-five miles an hour. After the Garretson car had passed the Ruffing car and returned to its own side of the highway and was about four hundred feet in advance of the Ruffing car, the pall of smoke, previously mentioned, lowered over the highway, and completely obstructed vision. Then Mrs. Helen Garretson took her foot off of

the accelerator and reduced her speed to about ten miles an hour, and was still some fifty or one hundred feet north of the smoke pall and in easy stopping distance from the smoke, when a Buick car driven by Mrs. Emma Tarnutzer, proceeding north on the highway, went through the smoke pall at a rate of speed of about sixty-five miles an hour, and came out of the smoke on Mrs. Tarnutzer's left-hand side of the road, and ran into the Garretson car with such force as to cause the instantaneous death of Mrs. Tarnutzer, fatal injuries to Mrs. Helen Irene Jones Garretson, and painful injuries to George Garretson. The Ruffing car and trailer continued south behind the Garretson car, and the Tarnutzer car drove the Garretson car a few feet back against the Ruffing car and trailer, injuring Mrs. Ruffing and damaging the Ruffing car and trailer. L. C. Wilbanks and Sam Tate were employees of the railroad company; and they started the fire on the railroad right-of-way and allowed it to spread to the highway right-of-way. Separate actions were filed by parties as follows: (1) George Garretson for his personal injuries. (2) Mr. Ruffing for his property damage. (3) Mrs. Ruffing for her personal injuries. (4) C. C. Garretson, husband of Mrs. Helen Irene Jones Garretson, for the loss of his wife. (5) George Garretson, administrator of the estate of Helen Irene Jones Garretson, for her conscious pain and suffering.

In all actions the defendants were Paul Howland, executor of the estate of Mrs. Emma Tarnutzer, deceased; Missouri Pacific Railroad Company, Guy A. Thompson, Trustee; L. C. Wilbanks and Sam Tate. Each plaintiff alleged the injuries and damages to have resulted from concurring acts of negligence of each and all of the defendants; that is, the railroad company and its employees were alleged to have been negligent in creating the fire and the pall of smoke over the highway; and Mrs. Emma Tarnutzer was alleged to have been negligent in driving at a fast and dangerous rate of speed and on the wrong side of the highway; and it was alleged that Mrs. Tarnutzer would not have been on the

wrong side of the highway except for the smoke; and that the negligence of the defendants was, therefore, concurrent.

Actions 1, 2 and 3, as above listed, were consolidated and tried to a jury on February 3, 1942, and resulted in verdicts and consequent judgments as follows: (1) George Garretson, $25,000; (2) Paul Ruffing, $211.13; (3) Mrs. Paul (Elsie) Ruffing, $500.

The appeal in these three actions is now cause No. 6930 in this court.

Actions 4 and 5, as above listed, were consolidated and tried to a jury on July 30, 1942, and resulted in verdicts and consequent judgments as follows: (4) C. C. Garretson (husband), $7,500; (5) George Garretson, administrator, $5,000.

The appeal in these two actions is now cause No. 7057 in this court.

All verdicts and judgments were against the defendants jointly and severally; and all have appealed. Pending the appeal, John B. Oviatt has become administrator of the estate of Mrs. Emma Tarnutzer, deceased; and has been substituted for Paul Howland, executor. The records and briefs are voluminous. The transcripts contain 874 pages; the abstracts contain 378 pages; and the briefs contain 340 pages. Many questions are argued, but these can be reduced to seven points: (1) The administrator of the estate of Mrs. Emma Tarnutzer claims the service on the estate is void. (2) The railroad company claims there is no evidence that its employees started the fire. (3) The railroad company claims that the smoke was not the proximate cause of the collision, and that the rules of concurrent negligence do not apply. (4) All appellants claim the appellees were jointly and severally guilty of contributory negligence. (5) All appellants claim errors in giving and refusing instructions. (6) In case No. 6930 herein, all the appellants claim the trial court erred in refusing to grant a new trial on the ground of newly-discovered evidence. (7) The appellants claim that each verdict was excessive.

We dispose of these points in the order listed.

## I. The Service Question.

Mrs. Emma Tarnutzer was killed in the collision, and this suit was against the executor of her estate. He was served with summons under the provisions of act 40 of 1941, and he questions the validity of that service.

The Legislature of Arkansas, by act No. 39 of 1933, provided for the service of process in civil actions upon nonresident owners, drivers, etc. This act is §§ 1375 and 1376 of Pope's Digest, and has been held constitutional by the Supreme Court of Arkansas in the cases of *Kelso* v. *Bush,* 191 Ark. 1044, 89 S. W. 2d 594; *Alexander* v. *Bush,* 199 Ark. 562, 134 S. W. 2d 519, and *Highway Steel & Mfg. Co.* v. *Kincannon,* 198 Ark. 134, 127 S. W. 2d 816, and in this last-mentioned case, the United States Supreme Court denied an appeal because of the want of a substantial federal question (308 U. S. 504, 60 S. Ct. 88, 84 L. ed. 431). In *Hess* v. *Pawloski,* 274 U. S. 352, 71 L. ed. 1091, 47 Sup. Ct. Rep. 632, the United States Supreme Court upheld the constitutionality of the Massachusetts act similar to the Arkansas act.

There was no provision in the said act of 1933 whereby service of process could be obtained upon the estate of a deceased nonresident owner or driver. To remedy that situation, the General Assembly of 1941 passed act No. 40, which amended act 39 of 1933, and provided that in a suit against any nonresident owner or driver, in case of death of such person, the action could be filed or continued against the administrator, executor, or other legal representative of the estate of such person; and said act 40 of 1941 provided that service of process might be had upon the executor, administrator or legal representative of the estate by complying with the provisions of the said statute.

Mrs. Tarnutzer's executor claims that the act appointed the Secretary of State as the agent for service of process on the nonresident owner, and that upon the death of the nonresident owner the agency expired. Many cases are cited in the able brief of the attorney

for Mrs. Tarnutzer's executor to sustain the well-known rule that death works a revocation of agency where the agency is not coupled with an interest, etc.; but we consider all of these cases to be beside the point. It is true that act 40 of 1941, stated that by using our highways a nonresident owner or driver constituted the Secretary of State as his agent for service of process; but that agency was not a common-law agency. The state, in passing such a statute, was acting under its police power, and such power is not limited to the rules of agency and contract. A nonresident who utilized the state's highways at a time when the General Assembly had promulgated laws under the police power was bound by such statutes. Consequences of his or her negligence could not be abrogated by the general rules of contract and agency; hence, an administrator or executor would not be relieved under the doctrine that the power of agency ends with death of the principal. The question goes to the power of the sovereign to pass such a law. We hold it has such power and has properly exercised it.

In *Young* v. *Masci,* 289 U. S. 253, 53 S. Ct. 599, 77 L. ed. 1158, 88 A. L. R. 170, the Supreme Court of the United States had before it a case where a nonresident owner had allowed another to drive his car into the state of New York. The question of the validity of the New York statute was raised, and the Supreme Court of the United States said: "Thus the essential question is the power of New York to make the absent owner liable personally for the injury inflicted within the state by his machine. . . . The power of the state to protect itself and its inhabitants is not limited by the scope of the doctrine of principal and agent. . . . In some states, including New York, the problem was left to the Legislature. . . . Its statute makes mere permission to use the car the basis of liability in case of negligent injury. No good reason is suggested why, where there is permission to take the automobile into a state for use upon its highways, personal liability should not be imposed upon the owner in case of injury inflicted there by the driver's negligence, regardless of the fact that the owner is a citizen and resident of another state."

While that case did not involve a suit against the executor of the estate of the deceased owner, still we can perceive no reason why the death of the owner would end the power of suit. In *Gessel* v. *Wells*, 229 App. Div. 11, 240 N. Y. S. 628, affirmed by the Court of Appeals, 254 N. Y. 604, 173 N. E. 885, a minor sought to avoid the effect of the New York statute on the theory of repudiation of contract. The New York court, in denying that contention, said:

"It is an exercise of police power of the state reasonably calculated to promote care and accountability on the part of all who use its highways for the operation of dangerous machines such as are motor vehicles. *Hess* v. *Pawloski*, 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091.

. . .

"But it is urged that the statute in question is based upon an implied agreement, which, in case of an infant, may be repudiated at his election. It would be strange if a police regulation of the state could be thus evaded. . . ."

In other states, with statutes similar to our act No. 39 of 1933, it has been held that the service of process could not be validly obtained upon the estate of the deceased nonresident owner or driver because the Legislature had failed to so provide (that is, the Legislature had failed to pass an act like our act No. 40 of 1941); but in all such decisions it was recognized that the Legislature could have provided just as our act No. 40 of 1941 does provide. In *Young* v. *Potter Title & Trust Co.*, 114 N. J. 561, 178 Atl. 177, the Supreme Court of New Jersey said: "It would have been easy had the Legislature wished to extend the agency, to make the service good against personal representatives."

In *Wisconsin* v. *Davison*, 216 Wis. 216, 256 N. W. 718, 96 A. L. R. 589, the court set out the words which, if added to the Wisconsin act similar to our 1933 act, would have made service good on personal representatives (just as our 1941 act does). The Wisconsin court thereby clearly recognized that such a statute was within the legislative power. In fact, it would seem possible

that the draftsmen of our act 40 of 1941 had before them the Wisconsin decision in preparing the draft of our act 40 of 1941. So, we hold that the service upon the executor of the estate of Mrs. Emma Tarnutzer was legal and valid.

## II. The Starting of the Fire.

The railroad contends that the evidence was not sufficient to take the case to the jury on the question of the starting of the fire. This was a fact question. Independent and disinterested witnesses testified they saw one of the railroad employees with a stick "encouraging the fire." It was shown that the two railroad employees, Wilbanks and Tate, were cutting grass. W. A. East, Clark county highway foreman, testified that early that morning he had talked to Tate while the fire was still on the *railroad* right-of-way and had warned him not to let the fire spread to the *highway* right-of-way; and that later he (witness) returned to the scene of the collision shortly after the mishap and the fire was on the highway right-of-way.

Lucille Roberts, a disinterested witness, testified that she was working in a cotton field near the scene of the collision and she saw Tate stirring the fire with a stick. She was asked if she and the others with her paid any attention to the fire, and she replied (referring to Tate), "I did when he was stirring the fire." There was other evidence on this same point.

A review of the evidence on this question convinces us that there was ample evidence to take this question to the jury, and the law is well settled that the decision of the jury is final on this fact question.

## III. Concurrent Negligence.

The railroad concedes that it would have been negligence to start a fire and allow dense smoke therefrom to cover the highway; but contends that such negligence was not the cause of the traffic mishap. The railroad insists that the independent efficient cause of the traffic mishap was the speed of Mrs. Tarnutzer's car, and the

fact that she was driving on the wrong side of the road. This question of whether there was concurring negligence was properly submitted to the jury under instructions which we find to be correct, and the verdict of the jury is conclusive on that question. We are not the triers of facts, and what our views might have been if we had been in the jury box is not the test in reviewing a jury verdict.

It was shown that Mrs. Tarnutzer had been driving at a speed of sixty-five miles an hour for several miles before entering the pall of smoke, and that she had driven without mishap and stayed on her right side of the road. It was shown that when she came out of the smoke screen her car was on the wrong side of the road and she swerved it to her right in a vain attempt to get back on her side of the road. The jury could have found from the evidence introduced that Mrs. Tarnutzer had driven at an excessive rate of speed, but without traffic mishap until the smoke blinded her vision. Of course she was negligent in driving at a rapid rate of speed and in driving into the pall of smoke; but the jury could have found that the railroad company's negligence, in setting the fire that caused the smoke, concurred with Mrs. Tarnutzer's negligence. The jury could have found there was never an independent efficient cause apart from the smoke. As is stated in 38 Am. Jur. 715: "The fact that some other cause concurred with the negligence of a defendant in producing an injury does not relieve the defendant from liability unless he shows that such other cause would have produced the injury independently of his negligence. . . . Under the rule that the court will trace an act to its proximate, and not to its remote, consequences, there may be two or more concurrent and directly cooperative and efficient proximate causes of an injury. Negligence which was operative at the time an injury was inflicted may constitute the proximate cause of the injury and be actionable, notwithstanding it concurred with the act of a third person to produce the injury. One who negligently creates a dangerous condition cannot escape liability for the natural and probable

consequences thereof, although the act of a third person may have contributed to the final result. For example, one negligently handling petroleum products without license in a city is liable for injury done to neighboring property by an explosion, although the act of a third person cooperates to produce the injury.''

The books contain many cases where two or more parties were each negligent and their negligence concurred to produce the injuries to a third party, and both negligent parties were held liable. A few of these cases are: *Helena Gas Co.* v. *Rogers,* 104 Ark. 59, 147 S. W. 473; *Healey & Roth* v. *Balmat,* 189 Ark. 442, 74 S. W. 2d 242; *Pine Bluff Water & Light Co.* v. *McCain,* 62 Ark. 118, 34 S. W. 549; see cases collected in West's Arkansas Digest, ''Negligence,'' § 61; and see, also, 45 C. J. 920-927. In Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 5, § 3273, it is stated: ''Where an automobile accident is caused by obstructing the vision of a motorist by dense clouds of steam or smoke or the burning of leaves or other rubbish in the highway, the persons responsible therefor may be held liable to an injured motorist.'' See, also, *Lambert* v. *Emise,* 120 N. J. L. 164, 199 Atl. 44.

So we hold in these cases that the question of concurrent negligence as the cause of the injuries and damages was properly submitted to the jury, and the jury's verdict is final on that question.

## IV.  Contributory Negligence.

All the appellants unite in arguing that the appellees were guilty of contributory negligence. We cannot hold that any of the parties in these cases were guilty of contributory negligence as a matter of law; but we do hold that the question of contributory negligence was a question of fact to be submitted to the jury, and there was ample evidence from which the jury could have found either way. Since the jury reached the conclusion that it did, we cannot disturb that finding. The testimony showed that when Mrs. Garretson was a hundred feet or more north of the smoke screen she took her foot off

of the accelerator, and that thereafter she was driving not in excess of ten miles an hour, and could have stopped in ten or fifteen feet. It would have been negligence for Mrs. Garretson to have driven into the pall of smoke, but it was not necessarily negligence for her to drive at a slow rate of speed waiting to see if the smoke would lift. The testimony showed that as puffs of wind occurred, the smoke might rise or lower. Independent witnesses testified that it had been behaving that way for an hour or more before the collision. When Mrs. Garretson was two miles north of the scene of the collision, there was no pall of smoke on the highway, but it lowered in front of her in the last two miles that she traveled. It cannot be said as a matter of law that a person is negligent who drives on his own side of the highway and is seventy-five feet away from a pall of smoke in the highway.

If Mrs. Garretson was not guilty of contributory negligence, then her husband and her estate could not be held for the consequences of negligence. It is argued that Mr. George Garretson was guilty of negligence. The testimony shows that as Mrs. Garretson slowed down her car, George Garretson looked back to see if they were a safe distance in front of the Ruffing car. A person who was looking and exercising reasonable care in a car safely driven could certainly not be guilty of negligence as a matter of law. So the question of contributory negligence was a question of fact to be submitted to the jury, and its decision is final.

Regarding Mr. and Mrs. Ruffing, the testimony is in hopeless conflict as to whether the Garretson car was driven back into their car or whether, without sufficient brakes, the Ruffings drove into the Garretson car. But in that state of conflict, the jury has settled the question, and we cannot disturb the verdict on the conflicting evidence.

## V. Instructions.

The appellants allege numerous errors regarding instructions given or refused. In case No. 6930 herein, the

court gave eleven instructions requested by appellees, twelve requested by Mrs. Tarnutzer's executor, and thirteen requested by the railroad company. In case No. 7057 herein, the court gave six instructions requested by appellees, ten requested by Mrs. Tarnutzer's executor, and nine requested by the railroad. So to set out each instruction and discuss it would unduly prolong an already long opinion.

From a study of all the instructions, we conclude that the learned trial judge correctly instructed the jury in every particular, and correctly refused those instructions that were refused.

### VI. Newly-Discovered Evidence.

In case No. 6930 herein, the appellants claim the trial court erred in refusing to grant a new trial on the grounds of newly-discovered evidence. On February 4, 1942, the judgments were rendered in this case and motions for new trial duly filed and overruled. Then on April 30, 1942, appellants filed in the trial court their supplemental motions for new trial in which they set forth that some three weeks after February 4, 1942, appellants had learned from a source of information not theretofore available that Mr. and Mrs. Paul Ruffing had told the said informant that at the time of the collision, the Tarnutzer car was on its right side of the highway, and the Garretson car was on its wrong side of the highway. Evidence was heard in support of the motion and in opposition to it; and the circuit court overruled the motion. There is no reversible error in the order of the circuit court in this regard for two reasons: First: Motions for new trial on account of newly-discovered evidence are addressed to the sound discretion of the trial court, and this court on appeal will not reverse the lower court for failure to grant the motion unless an abuse of discretion is shown.

In *Northwest Ark. Farmers' Mutual Ins. Co.* v. *Osborn,* 180 Ark. 757, 22 S. W. 2d 387, Judge Butler quoted from *McDonald* v. *Daniel,* 103 Ark. 589, 148 S. W. 271: " 'It has been repeatedly held by this court that appli-

cations for a new trial upon the ground of newly discovered evidence are left largely within the discretion of the trial court. Unless such discretion has been manifestly abused, the appellate court will not disturb the action of the trial court.' *McDonald* v. *Daniel,* 103 Ark. 589, 148 S. W. 271.''

For other cases so holding see West's Arkansas Digest, ''New Trial,'' § 99. After reviewing all the evidence heard for and against the motion, we find there was no abuse of discretion by the trial judge.

Second: In *Murphy* v. *Willis,* 143 Ark. 1, 219 S. W. 776, Judge Wood, speaking for the court, said: ''The rule is well established that newly discovered evidence which goes only to impeach the credit of a witness is not a ground for a new trial. *Minkwitz* v. *Steen,* 36 Ark. 260; *Tillar* v. *Liebke,* 78 Ark. 324, 95 S. W. 769; *Plumlee* v. *St. L. S. W. Ry. Co.,* 85 Ark. 488, 109 S. W. 515; *Davey* v. *Sifford,* 124 Ark. 599, 186 S. W. 83; *Hayes* v. *State,* 142 Ark. 587, 219 S. W. 312.''

For other cases so holding, see West's Arkansas Digest, ''New Trial,'' § 105. The only effect of the newly discovered evidence was to impeach the testimony of Mr. and Mrs. Paul Ruffing; so under the authority of the cases just cited, the trial court correctly overruled the motion.

## VII. Excessive Verdicts

The appellants challenge each of the verdicts as excessive. After a careful review of the cases, we reach the conclusion that none of the verdicts is excessive except the George Garretson verdict; and we find that it is grossly excessive. In the recent case of *Missouri Pacific Railroad Co.* v. *Newton, ante,* p. 353, 168 S. W. 2d 812, we stated our views on the duty of the appellate court to reduce grossly excessive verdicts; and what was there stated applies to the cases here.

George Garretson received a verdict for $25,000, and this verdict is grossly excessive to the amount of $12,500. It is true that he sustained a skull fracture and injury to

his shoulder and hip, and also bruises and cuts. There were two experts who testified that George Garretson was terribly injured. There were four who testified to the contrary. The actual physical facts support the latter group; because within two months after his injuries he had recovered sufficiently to drive his car; and it was shown in the evidence that he had recently driven his car to Arizona and return. These and other physical facts appeal to common sense and reason more than do hypothetical questions and answers.

If within fifteen juridical days a remittitur of $12,500 is entered by appellee, George Garretson, then the case for him will be affirmed; otherwise, the cause of George Garretson will be reversed and remanded for a new trial because of his excessive verdict.

As to all the other appellees, the causes are now affirmed.

Mr. Justice KNOX not participating.