KERR, ADMINISTRATOR *v.* GREENSTEIN.

4-8531                                                    212 S. W. 2d 1

Opinion delivered May 3, 1948.

Rehearing denied June 28, 1948.

*John R. Thompson,* for appellant.

*Moore, Burrow, Chowning & Mitchell,* for appellee.

Ed. F. McFaddin, Justice. The sufficiency of the service of process on the appellee is the issue for decision. The question is: does service pursuant to our non-resident motorist service statute apply to a defendant such as appellee?

Appellant, as administrator of the estate of Elmedia E. Kerr, filed action against the appellee in Pulaski Circuit Court, claiming damages for the death of the deceased. The complaint alleged that the deceased was driving her automobile on a public highway when the appellee negligently drove another car into and against her car, inflicting injuries which resulted fatally, and for which damages were prayed. The appellee was and is a non-resident of Arkansas, and service of process was obtained pursuant to the provisions of Act 39 of 1933 as amended by Act 40 of 1941. The text of these Acts may be found in 3 Ark. Stats., §§ 27-341 and 27-342.[1] We will refer to this statute as the "non-resident motorist service statute." The appellee filed motion to quash service; and the motion to quash was submitted to the circuit court on a stipulation reading entirely as follows:

"Comes the plaintiff, W. D. Kerr, as Administrator of the estate of Elmedia E. Kerr, deceased, by his attorney of record, John R. Thompson, and comes the defendant, Emanuel Greenstein, specially and not generally by his attorneys of record, Moore, Burrow, Chowning & Hall, and agree and stipulate upon the following facts for the sole purpose of the Court's consideration in passing upon the defendant's motion to quash summons issued and served upon him in this cause, by serving him under the provisions of Act 39 of the Acts of the General Assembly of the State of Arkansas for 1933, as amended by Act 40 of the Acts of 1941 of the General Assembly of the State of Arkansas:

"Mr. A. Sanders, a resident of Little Rock, Arkansas, died on April 21, 1946, and a number of relatives by

[1] This reference is to the Arkansas Statutes Annotated of 1947, published by Bobbs-Merrill Company, now in process of completion. This section is in Volume 3. Act 39 of 1933 may be found in §§ 1375-1376, Pope's Digest of 1937.

blood and marriage came to Little Rock for his funeral, among them being the defendant, Emanuel Greenstein, who is a resident of Chicago, Illinois, and a Mrs. Jennie Freeman, who is a resident of Dallas, Texas.

"Both Mr. Greenstein and Mrs. Freeman were guests in the A. Sanders home, which after the death of Mr. A. Sanders was occupied by his family. The wife of Mr. A. Sanders died some two years prior to the death of A. Sanders and he had not remarried.

"After the funeral of A. Sanders, Mrs. Freeman desired to return to her home in Dallas, Texas, and a few minutes before her train was due to leave the Missouri Pacific station, one of the daughters of Mr. A. Sanders requested Mr. Greenstein to·drive Mrs. Freeman to the railroad station, and it was while he was in the act of driving her to the station in the A. Sanders car that the collision occurred which is the ground of this suit.

"The automobile which the defendant, Emanuel Greenstein, was driving at the time of the collision with the Kerr automobile was owned by A. Sanders personally and bore an Arkansas 1946 state license issued him by the State of Arkansas, and bore no license of any other state. The car was used by Mr. A. Sanders for his own personal use and his daughters who lived with him had the privilege of using the car.

"The defendant, Emanuel Greenstein, at the time that said automobile collision occurred, was a resident and a citizen of the City of Chicago, and State of Illinois, and had his legal domicile in said City and State, and he has not changed his residence or domicile since said collision. He came to Little Rock for the Sanders funeral by railroad and returned in the same way following the automobile collision, and he did not have with him·in the State of Arkansas while here an automobile owned or controlled by him, and the only automobile which he drove while in the City of Little Rock and State of Arkansas was the A. Sanders car aforesaid.

"The service that has been had on the defendant in this cause was service of a summons under the pro-

visions of the above act, and it is the contention of the plaintiff that such service is sufficient service, while it is the contention of the defendant that valid service cannot be secured upon him under the provisions of said Acts under the facts hereinabove stipulated.''

The circuit court held the service to be insufficient, and sustained appellee's motion to quash. Thereupon the plaintiff elected not to ask for alias service, but prayed an appeal to the Supreme Court. Authority for treating the court's order as final and appealable may be found in the cases of *Berryman* v. *Cudahy Packing Co.,* 189 Ark. 1151, 76 S. W. 2d 956 and *Yocum* v. *Oklahoma Tire & Supply Co.,* 191 Ark. 1126, 89 S. W. 2d 919. There is thus presented the question of the sufficiency of the service of process, to be determined on the stipulated facts heretofore quoted. Appellant relies on *Oviatt* v. *Garretson,* 205 Ark. 792, 171 S. W. 2d 287, wherein we discussed our non-resident motorist service statute. Appellee claims that our statute provides for service only on "non-resident owners," and not on "non-resident operators" of vehicles owned and operated in Arkansas.

I. *Statute to be Strictly Construed.* At the outset, we state that our statute is to be strictly construed, because it is in derogation of common law. In *Brown* v. *Cleveland Tractor Co.,* 265 Mich. 475, 251 N. W. 557, and, again, in *Flynn* v. *Kramer,* 271 Mich. 500, 261 N. W. 77 the Supreme Court of Michigan, in discussing the Michigan non-resident motorist service statute, said:

''The statute is in derogation of common right, must be strictly construed, and cannot be extended by implication to include persons not coming within its terms.''

In *Jermaine* v. *Graf,* 225 Ia. 1063, 283 N. W. 428, the Supreme Court of Iowa, in discussing the Iowa non-resident motorist service statute, said.

''In several jurisdictions it has been held that statutes, of the nature of these we are discussing, are in derogation of the common law and must be construed strictly, and may not be extended by implication to non-

residents not coming within their terms. *Brown* v. *Cleveland Tractor Co.*, 265 Mich. 475, 251 N. W. 557; *Morrow* v. *Asher*, D. C., 55 Fed. 2d 365; *Day* v. *Bush*, 18 La. App. 682, 139 So. 42.''

In 5 Am. Juris. 830, ''Automobiles,'' § 591, the general rule is stated:

''Statutes which provide for constructive or substituted service of process on non-resident motorists are in derogation of common rights and should be strictly construed, and strict compliance therewith must be observed, although provisions should not be read into such a statute which are not expressly stated or necessarily implied.''

Other cases sustaining the above statements are: *Commonwealth* v. *Maryland Casualty Co.*, 112 Fed. 2d 352; *Webb Packing Co.* v. *Harmon*, 38 Del. 476, 193 At. 596; *Rose* v. *Gisi*, 139 Neb. 593, 298 N. W. 333.

II. *Historical Study of Our Statute.* Having therefore decided that our non-resident motorist service statute should be construed strictly, we come next to an historical study of the statute. In *Hess* v. *Pawloski*, 274 U. S. 352, 71 Law Ed. 1091, 47 S. Ct. 632, the United States Supreme Court, in 1927, sustained a Massachusetts statute providing for service of process on non-resident motorists. Subsequently in *Wuchter* v. *Pizzutti*, 276 U. S. 13, 72 L. Ed. 446, 48 S. Ct. 259, the United States Supreme Court in 1928 considered a New Jersey statute designed along the same lines as the Massachusetts statute, but held the New Jersey statute defective on a point not here at issue. These two cases probably served as the impetus for various states to adopt statutes similar to the Massachusetts statute, and without the fatal defect of the New Jersey statute. In 1929, the State of Oregon by Chapter 359 enacted a non-resident motorist service statute.[2] Many states have somewhat similar statutes.[3]

[2] The 1929 Oregon law together with a 1939 amendment were considered by the Oregon Supreme Court in *State* v. *Latourette*, 168 Ore. 584, 125 Pac. 2d 750.

[3] In the annotations following our statute in 3 Ark. Stats., § 27-341 comparative legislation is shown from some, but not all, of the

Our original statute (Act 39 of 1933) seems to be a composite of the Massachusetts, New Jersey and Oregon statutes. Act 40 of 1941 amended the 1933 Act, to permit service in an action against the estate of the deceased non-resident.

III. *Analysis of Our Statute.* Our completed statute (Act 40 of 1941) is found in 3 Ark. Stats., §§ 27-341 and 27-342. Insofar as the point here at issue is concerned, the statute provides:

" . . . the acceptance by a non-resident owner, chauffeur, operator, driver of any motor vehicle, . . . of the rights and privileges conferred by the laws of the State of Arkansas to drive or operate . . . a motor vehicle upon the public highways of said State as evidenced by his or its operating or causing or permitting a motor vehicle to be operated . . . on such highway in the State of Arkansas shall be deemed equivalent to the appointment by such non-resident owner, . . . of the Secretary of the State of Arkansas . . . to be the true and lawful attorney and agent of such non-resident owner upon whom may be served all lawful process in any action or proceedings against him . . . growing out of any accident or collision in which said non-resident owner or any agent, servant or employee of any such non-resident owner may be involved while operating a motor vehicle on such highway, . . . Service of such process shall be made by serving a copy of the process on the said Secretary of State and such service shall be sufficient service upon the said non-resident owner, . . ."

It will be noted that in the first part of the first sentence (and also in the caption) the words "chauffeur, operator, driver" appear. But in the portion of the Act which speaks of which non-resident has made the appointment, the words are:

---

other States. In Blashfield on Automobile Law and Practice, Permanent Edition, § 5913, there is a discussion of non-resident motorist service statutes and the cases construing them. In 32 Mich. Law Review, p. 325, there is an article "Process in Actions Against Non-resident Motorists." See, also, annotations in 155 A. L. R. 333, 138 A. L. R. 1464, 125 A. L. R. 457, 96 A. L. R. 594, 82 A. L. R. 768, 57 A. L. R. 1239, and 35 A. L. R. 951.

". . . shall be deemed equivalent to appointment by *such non-resident owner*." (Italics our own.)

Furthermore, in speaking of the sufficiency of the service, the language is:

". . . such service shall be sufficient service upon the *said non-resident owner*." (Italics our own.)

In short, there is no sentence in the Act which says that service on the Secretary of State shall be sufficient service on a *non-resident operator* of an automobile owned by or registered in the name of a citizen of this State.

We have previously mentioned the Oregon statute (Chapter 359 of 1929), which is captioned:

"To Grant to Non-resident Owners of Motor Vehicles the Privilege of Using the Highways of the State of Oregon, and Providing for the Appointment by Such Non-resident Users of the Highways of the State of Oregon of the Secretary of State as Attorney in Fact for such Non-resident Owners of Vehicles. . . ."

In *State* v. *Latourette*, 168 Ore. 584, 125 Pac. 2d 750, the Supreme Court of Oregon had before it a case in which the defendant was merely the non-resident operator, and not the non-resident owner, of the automobile which was being driven at the time of the collision. There was thus presented the question as to whether the Oregon statute of 1929 included a *non-resident operator* as distinct from a *non-resident owner,* and the Oregon Supreme court pointed out that only a non-resident owner could be brought into court by service of process on the secretary of state under the 1929 Oregon statute. Said the court:

"If it had desired, the legislature could have included within Chapter 359, Oregon Laws 1929, all non-resident operators of motor vehicles on the highways of this State. It limited the application of that Act, however, by the title thereof, to non-resident owners of motor vehicles. We are not permitted to enlarge the scope of the enactment."

Further, the Oregon court said:

" . . . the 1929 enactment limited the Act to non-resident owners of motor vehicles using the highways of this State, and . . . such title was not broad enough to include all non-residents. . . . It is our conclusion that Chapter 359, Oregon Laws 1929, does not include or apply to non-resident drivers or motor vehicles on the highways of the State of Oregon, unless they are the owners of such vehicles, for the reason that the title of the Act is limited to non-resident owners of motor vehicles."

The Oregon case is highly persuasive. Under the facts stipulated in the present case, the appellee was not a *non-resident owner,* but was merely a *non-resident operator.* We cannot find in our statute any statement which says that service on the Secretary of State is service on anyone except a *non-resident owner.* Since appellee does not come within that designation, and since the statute should be strictly construed, we reach the conclusion that the circuit court was correct in sustaining the motion to quash. Under the holding of the U. S. Supreme Court in *Hess* v. *Pawloski, supra,* it may be within the power of our legislature to broaden our statute; but what we here decide is, that our present non-resident motorist service statute does not make service on the Secretary of State sufficient service on anyone except a "non-resident owner."

IV. *Disposing of Appellant's Other Arguments.* To sustain the service on the appellee, several suggestions have been made. These we now discuss:

1. It is pointed out that in the first part of the first sentence of our statute, the words are "non-resident owner, chauffeur, operator, driver . . .", whereas in subsequent instances the words are merely *"such* non-resident owner" or *"said* non-resident owner." It has been suggested that the use of the words "such" and "said" has the effect of making "non-resident owner" in each instance include also "chauffeur, operator, driver," since these last-quoted words follow immediate-

ly after "owner" both in the caption of the 1933 Act and in the first sentence of the Act. But the words "such" and "said" are reflexive and restrictive. They call attention to the one previously mentioned; they are not substitutes for *et cetera*." If the framers of our Act had intended that "chauffeur, operator, driver" were to be understood as going along with "owner" in each instance, the definite words so stating should have been placed in the Act. In giving the Act a strict construction, we are not free to enlarge its words.

2. It has been suggested that a *non-resident operator,* while he is operating the vehicle in this State, occupies the position of "owner," since he is in charge of the vehicle; and based on that suggestion, we are asked to say that an operator is always an owner. To support that argument, attention has been called to the case of *C. R. I. & P. Ry. Co.* v. *State,* 84 Ark. 409, 106 S. W. 199, wherein we held that a corporation operating a railroad was liable under a statute imposing duties on an owner. But that case quoted as in point a Missouri case which said:

"If the defendant was at the time in the possession of and running and operating the railroad in question, it was presumptively the owner; and, in the absence of a contrary showing the court would be authorized in holding defendant to be the owner."

In the case at bar there can be no "presumption," because there is a "contrary showing," in that the stipulated facts negative any presumption of appellant's ownership. Furthermore, our motor registration statute (§ 6667, Pope's Digest) defines "owner"; and our non-resident motorist service statute, here involved, contains no other definition of that word.

3. It is suggested that the word "owner" is surplusage in our non-resident motorist service statute: that is, that the statute would be complete to merely say "non-resident," and would thus apply to all non-residents, whether owners or operators. But to strike out the word

"owner" would be to enlarge the statute and give it a liberal construction, whereas, as previously pointed out, the statute should be strictly construed. We are not privileged to strike out a word when the effect would be to liberalize the statute that is to be strictly construed.

4. Finally, it is insisted that in *Oviatt v. Garretson,* 205 Ark. 792, 171 S. W. 2d 287, we said that the Act provided for service on "non-resident owners, drivers, etc.," and—because of such language—it is urged that we should now apply the statute to non-resident operators. The answer to this argument is that, a non-resident owner was also the driver in the Oviatt case; and the language in that opinion referred to such a situation. Furthermore, past its applicability to the case then decided, the language was dicta, and the dicta in one case cannot serve as the *ratio decedendi* in a succeeding case.[4]

*Conclusion:* Since appellee was merely a non-resident *operator,* and not a non-resident *owner,* it follows that the circuit court was correct in sustaining the motion to quash. Therefore the judgment is affirmed.

The Chief Justice and Mr. Justice ROBINS dissent.

GRIFFIN SMITH, Chief Justice, dissenting. The majority opinion, as an academic treatise on the science of interpretation and explanation, (sometimes spoken of as hermeneutics) would not provoke disputation; but when applied to the controversy presented by the appeal of Kerr as Administrator the reasoning seems fallacious. It rests upon the proposition that merely because a tortfeasor is a nonresident he has a common *right* to avoid trial in the state where his alleged negligence caused injury, followed by death.

The decision would be correct if it can be said that the General Assembly was more concerned with actual ownership of a motor vehicle than it was with the result so clearly expressed in the statute.

---

[4] The foregoing statement appears in *McLeod* v. *Dilworth,* 205 Ark. 780, 171 S. W. 2d 62.

Act 40 of 1941 amends Act 39 of 1933. In each the emergency asserts that if injury or damage occurs within the State ". . . on account of the acceptance of the rights and privileges to so use such highways, . . . and whereas, when such damage is so done by such non-resident owners or their agents, servants, or employees by the operation of motor vehicles, which are dangerous machines, and the use of which [is] attended by serious damages to persons and property, and whereas in cases of such injury and damage by such non-resident owners those suffering damages thereby have no convenient method by which they may sue to enforce their rights, . . . this Act [is] necessary", etc.

Clearly the legislative intent was to create a service agent for convenience of one injured by a non-resident who had accepted the State's conditional grant of highway use, and the word "owner" is of the same dignity as "chauffeur, operator, driver," mentioned in Sec. 1 of the Act. This construction finds support in subsequent designations, where the reference is to "such" non-resident owner, or "said" non-resident owner. Failure of the lawmakers to repeat "chauffeur", "operator" or "driver" is held by the majority to disclose a design not to include them, notwithstanding the fact that rights were being created for citizens who were injured in property or person.

While the precise question in the instant appeal was not before the Court in *Oviatt, Administrator,* v. *Garretson,* 205 Ark. 792, 171 S. W. 2d 287, (*ownership* of the car driven by Mrs. Tarnutzer having gone unchallenged) it is of interest that attorneys who represented the executor in that case (who are now attorneys for the appellee here) treated the Act as applicable to any non-resident motorist who made use of Arkansas highways. At page 21 of that appellant's brief it is said, "If this is true the statute that provides that *one who uses the highways* . . ." etc. Page 27: "Manifestly under our statute there is no interest coupled with the agency power of the Secretary of State to accept service of summons such as to survive the death of

458

*the non-resident user of our* highways. . . ." Page 28: ". . . Nor is [the Secretary of State] given any interest in any cause of action or suit arising out of *the use of the highway by the non-resident motorist*". At page 31 the reference is to "the Buick car driven by Mrs. Tarnutzer".

Mr. Justice McFADDIN, in writing the Court's unanimous opinion in the Oviatt case, said: "There was no provision in [Act 39 of 1933] whereby service of process could be obtained upon the estate of a deceased nonresident owner or driver. To remedy this situation, the General Assembly of 1941 passed Act No. 40, which amended Act 39 of 1933, *and provided that in a suit against any non-resident owner or driver,* in case of death, . . . , the action could be filed or continued against the administrator or executor". Again it was said: "It is true that Act 40 of 1941 stated that by using our highways a non-resident *owner or driver* constituted the Secretary of State as his agent for service of process". And finally, "A non-resident who utilizes the State's highways . . . was bound by such statutes."

There was no recorded expression at variance with these definite statements of what the two Acts then stood for. Since the statutes are the same today that they were when the construction concurred in by counsel for the appellant was reached in 1943, I can see no overpowering necessity for judicial emasculation of Act 40 in the interest of a so-called "common right"—that is, the right not to be sued in the State where the injury occurred.

In *Tallman* v. *Tallman*, 23 N. Y. S. 734, 3 Misc. 465, the word "interpretation" was said to have been defined as the process by which the intention of a writer is determined, either from his words, "or from other conjectures, or both". Rutherford, 2 Inst. 414, divides interpretation into three sorts—literal, which is where we collect the intention from the words used, and from no other source; rational, where the words do not express the writer's intention perfectly, but either exist

or fall short of it, so that we are going to collect it from probable or rational conjectures only; and mixed, where the words, though they do express the writer's intention when they are rightly understood, but are in themselves of doubtful meaning, and we are forced to have recourse to conjectures to find out in what sense they are used''.

Effect of the majority opinion is to say that, although the lawmakers, by express words, said their intention was to provide a method for serving non-resident *owners, chauffeurs, operators, drivers,* of motor vehicles, yet when in subsequent provisions these non-residents were spoken of as ''said'' owners, or ''such'' owners, then there was nothing in the Act by which to determine in what sense ''such'' and ''said'' were used, hence chauffeurs, drivers, and operators could not have been in the legislative purview; and though non-residents use of our highways, a construction in derogation their ''common rights'' must not be applied.

It was said in *Roberts* v. *Portland Water District,* 126 A. 162, 124 Me. 63, that ''interpretation'' is ascertainment of true sense of any form of words, and ''construction'' is drawing of warrantable conclusions not always included in direct expression.

I am unable to understand how any warrantable conclusion other than that the service was good can be drawn from Act 40, and I still agree with what was said about it in the Oviatt case.

The rule that a particular statute must be strictly construed does not mean that by narrow or forced interpretation matters obviously within the legislative purpose must be excluded merely because, after an intent has been expressed, it was not followed by precise words when the apparent object was subsequently alluded to. No practice is better established than this. Reports are full of cases in which it is said that intention of the lawmakers is to be derived ''from a view of the whole and of every part of the statute, taken and compared together. . . . When words are not explicit, the intention is to be collected from the context and the occa-

sion and necessity of the law, and from the mischief felt and the remedy in view; and the intention is to be taken or presumed according to what is consonant to reason and good discretion". The quotation is credited to Chancellor Kent. See Walker's opinion, In re *Merrill,* 102 Atl. 400.

The case presented by Kerr results in a determination by this Court that the "mischief felt and the remedy in view" had no relation to the act of a non-resident who came into the state and as driver of a borrowed car negligently used the highways. The majority says there are no words in the Act "consonant with reason and good discretion" from which an intent to hold any but an owner can be presumed. "Owners, agents, servants, or employes," found in the emergency clause, and "owner, chauffeur, operator, driver", appearing in Sec. 1, are declared to be strangely ambiguous and obscure, hence without meaning.

Mr. Justice ROBINS joins in this dissent.