CHARLES FARONE, PLAINTIFF-APPELLANT, v. FRIEDA L. HABEL, EXECUTRIX OF THE ESTATE OF CLIFFORD W. HABEL, SR., DECEASED, ETC., DEFENDANT-RESPONDENT.

Argued June 4, 1956—Decided June 25, 1956.

*Mr. Nathaniel W. Franzblau* argued the cause for the appellant.

*Mr. Saul J. Zucker* argued the cause for the respondent (*Messrs. Kristeller & Zucker,* attorneys).

The opinion of the court was delivered by

JACOBS, J. The Law Division dismissed the plaintiff's action against the defendant executrix on the ground that no exemplified copy of the letters testamentary issued to the defendant by the Surrogate of the County of Westchester in the State of New York had been filed with the clerk of the court pursuant to *N. J. S.* 3*A* :12–7. The plaintiff appealed to the Appellate Division and we certified on our own motion.

Pop's Diner, Inc. is a corporation which was formed in 1932 under the laws of our State to operate a diner at Harrison, New Jersey. Originally the 30 shares of the corporate stock were held by the defendant, her husband and her father. After her father's death his shares went to her mother who later turned them over to the defendant and her husband. When the defendant's husband Clifford W. Habel, Sr. died on October 5, 1954 he held 16 shares of the corporate stock and the defendant held the remaining 14 shares. For many years prior to the death of the defendant's husband the plaintiff had charge of the diner as manager and he continued his employment as such until he was discharged on March 28, 1955. Apparently his functions were taken over by the defendant and from about March 19, 1955 she was at the diner every day. She denies, however, that she was there in her capacity as executrix of the estate of her deceased husband; her position is that she was at the diner solely for the purpose of protecting her individual interests as a creditor and stockholder of Pop's Diner. There was controverted testimony by the plaintiff that the defendant told him on several occasions that she was at the diner "looking after her husband's interests" and that the corporate stock owned by her husband

was in the office of a New Jersey attorney. See *State by Van Riper v. American Sugar Refining Co.,* 20 *N. J.* 286 (1956); *Elgart v. Mintz,* 123 *N. J. Eq.* 404 (*Ch.* 1938). There was further testimony by the plaintiff that although he had nominally been an officer and director of the corporation, the defendant had told him that her husband "was the sole owner and her and I were just the dummies in the corporation." At the time of the death of the defendant's husband his New Jersey interests (apart from Pop's Diner) were as follows: Spring Lake real property in the name of the defendant and her husband as tenants by the entirety; a mortgage on Spring Lake property running to the defendant and her husband "jointly and to the survivor"; and a mortgage on Harrison property running simply to the defendant and her husband. See *N. J. S. A.* 46:2D-1. The record is somewhat obscure on the question as to whether any interest on the mortgages was past due at the time of the husband's death.

On April 21, 1955 the plaintiff filed his complaint in the Law Division against the defendant as executrix of the estate of Clifford W. Habel, Sr., deceased. It alleged that on February 19, 1953 Clifford W. Habel, Sr. delivered a check to the plaintiff in the sum of $1,875 and that no part thereof was ever paid. The plaintiff asserts that he gave cash to Mr. Habel at the diner in Harrison and received the check which is set forth in his complaint. The defendant was served personally with the summons and complaint on April 25, 1955 at the diner in Harrison and shortly thereafter a motion was made to dismiss the proceeding on the following grounds: (1) "the court lacks jurisdiction over the person of the defendant," (2) "insufficiency of process," (3) "insufficiency of service of process," and (4) the "defendant, being a foreign executrix, is not liable to be sued in her representative capacity in the courts of this state." The notice of motion set forth that reliance would be placed on the pleadings and the decisions in *Durie v. Blauvelt,* 49 *N. J. L.* 114 (*Sup. Ct.* 1886); *Babbitt v. Fidelity Trust Co.,* 70 *N. J. Eq.* 651 (*Ch.* 1906); *Green v.*

*Dolin,* 5 *N. J. Misc.* 1000 (*Cir. Ct.* 1927); *Young v. Potter Title & Trust Co.,* 114 *N. J. L.* 561 (*Sup. Ct.* 1935), affirmed 115 *N. J. L.* 518 (*E. & A.* 1935); and *Johnson v. Wood,* 15 *N. J. Misc.* 150 (*Cir. Ct.* 1936).

██ The plaintiff relies on *N. J. S.* 3A:12–7 which now provides that any foreign fiduciary may maintain "or be made a party defendant" to any action which is to be commenced in any court of this State "as if his letters had been granted in this state"; provided that "prior to, pending or subsequent to the action" an exemplified copy of his letters is filed in the Superior Court Clerk's office. Before 1937 the statutes dealing with actions relating to foreign fiduciaries were confined to actions by them and did not authorize actions against them. See *L.* 1879, *c.* 16, *p.* 28; *L.* 1887, *c.* 121, *p.* 154; *L.* 1896, *c.* 119, *p.* 173. However, in 1937 the Legislature passed an amendatory act which in express terms related to actions against foreign fiduciaries as well as actions by them; it authorized a foreign executor or administrator to sue or "be made a party defendant" in our courts provided an exemplified copy of his letters was duly filed. *L.* 1937, *c.* 28, *p.* 64. During the following year the Legislature passed a further amendatory act which provided that the exemplified copy of the letters could be filed "prior to, pending or subsequent to the said action." *L.* 1938, *c.* 140, *p.* 295; *N. J. S.* 3A:12–7. The legislative purposes underlying the 1937 and 1938 amendments seem entirely evident. The earlier enactments did not authorize suits against foreign executors and administrators and the decisions thereunder adhered strictly to the doctrine that in the absence of express statutory authority such persons could not, without their consent, be subjected to suits in their representative capacities in the courts of New Jersey. See *Babbitt v. Fidelity Trust Co., supra; Green v. Dolin, supra; Young v. Potter Title & Trust Co., supra; Johnson v. Wood, supra.* See also *Clapp, Wills and Administration,* 6 *New Jersey Practice* 538 (1950). The reasons advanced in support of the broad immunity generally afforded to foreign representatives have properly been questioned (see *Notes,* 57 *Yale L. J.* 647

(1948), 1955 *U. Ill. L. Forum* 764) ; the immunity has often-times unjustly compelled residents to seek relief in distant places even when the foreign representatives could be served personally within the State's borders and their fiduciary activities within the State exceeded by far the minimum jurisdictional contacts which may be said to be necessary to satisfy due process requirements and firmly imbedded con-cepts of fair play and substantial justice. Compare *International Shoe Co. v. Washington,* 326 *U. S.* 310, 66 *S. Ct.* 154, 90 *L. Ed.* 95 (1945), with *Pennoyer v. Neff,* 95 *U. S.* 714, 24 *L. Ed.* 565 (1878). See *Korff v. G & G Corporation,* 21 *N. J.* 558 (1956). In any event, New Jersey's statutes now clearly embody wide legislative authorization for the naming of foreign fiduciaries as defendants in New Jersey actions; our judicial function is to effectuate the statutory authorization within the controlling constitutional limita-tions, both state and federal.

The first point raised in the defendant's brief is that the dismissal of the complaint was warranted because the plaintiff had not duly filed an exemplified copy of the letters testamentary issued by the Surrogate of the County of West-chester. Counsel for the plaintiff states that at the time the motion for dismissal was argued he informed the court that through inadvertence he had obtained a certified rather than an exemplified copy and requested a reasonable exten-sion of time within which he could file the proper copy. It seems to us that his request should have been granted; in any event, the statute (*N. J. S.* 3A :12–7) expressly permits the filing of the exemplified copy after the institution of the action and under the circumstances presented the dis-missal of the complaint may not fairly be supported on the ground that the exemplified copy was not actually on file when the motion came on to be heard.

The defendant's second point is that *N. J. S.* 3A :12–7 does not authorize "a party other than the foreign fiduciary" to file the exemplified copy of his letters. No such limitation appears in the statute and we know of no just reason why it should be interpolated; it is highly significant that in the

legislation prior to 1937 the provision relating to the exemplified copy referred to its filing by the fiduciary, whereas the 1937 and 1938 amendatory acts were not so confined. In her third and final point the defendant contends that if the statute is not limited in the manner advanced by her, then it is unconstitutional under *Pennoyer v. Neff, supra*. See *Note, "Constitutionality of statute allowing suit to be instituted or continued against foreign executors or administrators,"* 40 *A. L. R.* 796 (1926). Compare *Leighton v. Roper*, 300 *N. Y.* 434, 91 *N. E.* 2d 876, 18 *A. L. R.* 2d 537 (1950), with *Knoop v. Anderson*, 71 *F. Supp.* 832 (*D. Iowa* 1947). See *Plopa v. DuPre*, 327 *Mich.* 660, 42 *N. W.* 2d 777 (1950); *Oviatt v. Garretson*, 205 *Ark.* 792, 171 *S. W.* 2d 287 (1943); 61 *Harv. L. Rev.* 355 (1948); 25 *N. Y. U. L. Rev.* 907 (1950); 33 *Corn. L. Q.* 276 (1947); 28 *Chi-Kent L. Rev.* 347 (1950).

In *Leighton v. Roper, supra,* the New York Court of Appeals had occasion to deal somewhat with the suggested constitutional problem. Earlier New York enactments which had sought to enable suits against foreign executors generally had been held invalid, but in 1945 a New York statute was passed which authorized substituted service on the executor or administrator of a nonresident motorist involved in an accident on a New York highway. In 1946 the plaintiff, a resident of New York, was injured and the decedent, a resident of Indiana, was killed in a New York accident. The defendant was appointed administrator of the decedent's estate by an Indiana court and the plaintiff effected substituted service upon him through the Secretary of State of New York. Thereafter the administrator moved to dismiss the plaintiff's complaint and vacate the service. The motion was denied and the constitutionality of the 1945 statute was in all respects upheld in an opinion by Judge Froessel for the entire court. There were no assets of the estate in New York and the court expressed its awareness that any judgment ultimately entered in New York against the administrator would be collectible only from the estate (*cf. Stacy v. Thrasher*, 6 *How.* 44, 47 *U. S.* 44, 60, 12 *L. Ed.*

337, 344 (1848)) and would presumably have to be presented to the Indiana court in regular course; it pointed out that it was unnecessary to determine what effect the Indiana court would be required to give the judgment under the full faith and credit clause of the Federal Constitution. See *Holt, "Extension of Non-Resident Motorist Statutes to Non-Resident Personal Representatives,"* 101 *U. Pa. L. Rev.* 223 (1952). It noted that its statute provided for "all of the procedural safeguards required for due process of law," and it distinguished the earlier New York holdings (*McMaster v. Gould,* 240 *N. Y.* 379, 148 *N. E.* 556, 40 *A. L. R.* 792 (1925); *Helme v. Buckelew,* 229 *N. Y.* 363, 128 *N. E.* 216 (1920)), largely on the ground that the 1945 enactment embraced an implied consent to service which was binding upon both the nonresident motorist and his foreign executor or administrator. However, in *Olberding v. Illinois Central R. Co.,* 346 *U. S.* 338, 340, 74 *S. Ct.* 83, 85, 98 *L. Ed.* 39, 43 (1953), the United States Supreme Court recently re-acknowledged that the real jurisdictional basis was not one of consent but was rather one which rested on the extent of the contact between the nonresident and the state seeking to exercise jurisdiction over him; in the course of his opinion for the court, Justice Frankfurter said:

"It is true that in order to ease the process by which new decisions are fitted into pre-existing modes of analysis there has been some fictive talk to the effect that the reason why a non-resident can be subjected to a state's jurisdiction is that the non-resident has 'impliedly' consented to be sued there. In point of fact, however, jurisdiction in these cases does not rest on consent at all. * * * The defendant may protest to high heaven his unwillingness to be sued and it avails him not."

In the foreign motorists cases the use of the state's highways is now universally accepted as an adequate jurisdictional contact; in many other situations, single transactions within the state are equally recognized as sufficient contacts enabling substituted service in actions arising out of the transactions. See *Smyth v. Twin State Improvement Corp.,* 116 *Vt.* 569, 80 *A. 2d* 664, 25 *A. L. R. 2d* 1193 (1951); *Zacharakis v.*

*Bunker Hill Mut. Ins. Co.,* 281 *App. Div.* 487, 120 *N. Y. S.* 2d 418 (1953), leave to appeal granted 281 *App. Div.* 1019, 121 *N. Y. S.* 2d 271 (1953). *Cf. Ehrenzweig, "The Transient Rule of Personal Jurisdiction,"* 65 *Yale L. J.* 289 (1956); *Overton, "Broadening the Basis of Individual In Personam Jurisdiction in Tennessee,"* 22 *Tenn. L. Rev.* 237 (1952); *Note, "Recent Constitutional Developments on Personal Jurisdiction of Courts,"* 4 *Vand. L. Rev.* 661 (1951).

 In the instant matter we are not at this time concerned with any questions relating to substituted service, the extent of assets in New Jersey, or the effect in other states of any New Jersey judgment ultimately rendered; the particular circumstances presented clearly enable the fair and constitutional application of *N. J. S.* 3A:12-7 to sustain the filing of the plaintiff's complaint against the defendant as executrix and its personal service on her within New Jersey. The original transaction which gave rise to the plaintiff's claim took place in New Jersey and the defendant's presence in New Jersey at the time of the service upon her was not an isolated one nor one exclusively in her individual capacity; she was in New Jersey in the regular course of her continued supervision of the Harrison diner for the benefit of the estate as well as for the benefit of herself individually. It seems entirely evident to us that she was overseeing the operation of the diner at least in part to preserve (as was her duty as executrix) the assets of her husband's estate. At oral argument counsel for the defendant conceded that if her husband had individually owned the diner its operation by her during the administration of his estate would have sufficiently placed her in New Jersey in her fiduciary capacity for purposes of jurisdiction and service; in the light of the circumstances in the instant matter the difference may justly be viewed as one of form rather than substance. Pop's Diner, Inc. was actually a family corporation without any outsiders involved, and the defendant's continued and extensive activity at the diner in Harrison was for the benefit of all of the family interests concerned; she was here in her fiduciary as well as her in-

dividual capacity despite her present protestations to the contrary. In view of this independent finding (*R. R.* 1:5-4) we need not deal with the many other interesting issues which are implicit in the various contentions raised by the plaintiff to support his position that the defendant as executrix was properly served in New Jersey and that the complaint was erroneously dismissed.

Reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, JACOBS and BRENNAN—6.

*For affirmance*—None.